### BRYAN v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1904.)

#### No. 1,341.

1. COUNTERFEITING—EVIDENCE—SEPARATE OFFENSES—ADMISSIBILITY TO SHOW INTENT.

In a prosecution for uttering counterfeit 5-cent pieces, where it was completely and satisfactorily shown that defendant had in his possession and passed certain counterfeit 5-cent pieces, evidence that molds for making 25-cent pieces were found in a tool chest used jointly by defendant and another was admissible to show a criminal intent in passing the 5-cent pieces.

2. SAME—DISMISSAL OF COUNT OF INDICTMENT—EFFECT ON EVIDENCE.

Where an indictment for counterfeiting alleged in one count the passing of counterfeit 5-cent pieces, and, in another count, charged defendant with possessing molds for counterfeiting 25-cent pieces, the dismissal of

the latter count did not operate to withdraw from the jury evidence introduced thereunder, where such evidence was admissible to show criminal intent under the former count.

3. CRIMINAL LAW—TRIAL—ARGUMENT TO JURY—INTERRUPTION BY COURT.
    Where counsel erroneously stated in his argument to the jury that the effect of the dismissal of one count of an indictment operated to withdraw the evidence introduced thereunder from the consideration of the jury, it was proper for the court to interrupt him in such statement.

In Error to the District Court of the United States for the Western District of Texas.

W. M. Walton and Geo. S. Walton, for plaintiff in error.
Henry Terrell, U. S. Atty.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The plaintiff in error was duly charged by indictment, embracing five counts, with having violated the laws of the United States on the subject of counterfeiting the government money, as follows: (1) Uttering one counterfeit five-cent piece on the 31st of July, 1902; (2) uttering one like five-cent piece on August 1, 1902; (3) having in his possession on August 13, 1902, two counterfeit five-cent pieces; (4) with having in his possession on the 13th of August, 1902, two certain counterfeit molds in likeness of United States quarter-dollar pieces; (5) with having on July 1, 1902, made and forged fifty counterfeit five-cent pieces.

Early on the morning of August 13, 1902, W. H. Forsyth, an agent of the United States secret service, accompanied by F. H. Lancaster, a deputy United States marshal, went to the house of the plaintiff in error, who will hereinafter be called the defendant. The defendant was not then up. The officers aroused him, and at once searched him, and to some extent examined the house in which he was living. They then, having the defendant under arrest, went with him to the house of one J. H. Brown, and from there (the house of J. H. Brown) they took the defendant and Brown to a warehouse in which there were a carpenter's workbench and tool chest. The defendant and Brown made no objection to accompanying the officers to the warehouse. The front door of the warehouse was locked. Lancaster got the key to this lock from either the defendant or Brown—he cannot say which—and unlocked the front door. The officers then searched this shop, and found some pieces of metal—babbitt, half-and-half, and lead. They then turned to the tool chest. The key to this was given to the deputy marshal by J. H. Brown. Before unlocking the chest both the defendant and Brown, in answer to the deputy marshal's questions as to whose chest it was, replied that they both had used it; had tools in it; that it was a partnership box. Thereupon he unlocked the chest or box, and searched it and found— At this point the defendant objected to any testimony as to what was found in the tool chest or box until it was proven that the defendant was the owner or in possession thereof, and exercised personal control of the same. The same objection having been made at the same

point in the progress of examination as witnesses of each of the officers, the objection was overruled, and the witness Lancaster testified that in the bottom of the tool chest he found two 25-cent molds made of plaster paris. The date, he thinks, was 1900. These molds were wrapped in paper. He did not open the package, but handed it to Mr. Forsyth, who did open it, and exposed the said molds to view. He searched further in the chest, and thinks he found a piece of babbitt metal. Soon after the search of the tool box was finished, Mr. Forsyth went away, and while he was absent Lancaster said to defendant and J. H. Brown, who was also under arrest, that it would save searching if they would tell where the five-cent molds were, and one of them said that they need not search any further—"You got everything;" and the witness believes that he said the nickel molds had been destroyed.

The nickels referred to in the first, second, and third counts of the indictment were all identified satisfactorily, and satisfactorily proven to be counterfeit, and were introduced in evidence to the jury. Three of the nickels exhibited and introduced in evidence had been sent by mail to the witness Forsyth at Dallas. In the search the witnesses made of the defendant, they found in one of his pockets one counterfeit nickel of the same date and mold mark as those which Forsyth had received. In the other pocket they found a genuine nickel of the same date. On the genuine nickel there were particles of plaster paris, or what the witness took to be and believed were such. The witness also found in a room in Bryan's house, that seemed to be unoccupied, two cans, small size, that had in them some mixed plaster paris, and also a piece of glass about three inches in diameter with some mixed plaster paris on it. On this glass was a space about an inch and a half in diameter, where some object with a roundish bottom had been placed, and around this place were smears of mixed plaster of paris. They also found a small paper sack with unmixed plaster of paris in it. In this connection, the witness Forsyth described the modes of counterfeiting by use of plaster paris to make molds, etc.

The witness Dee Simpson stated that in the afternoon of July 31, 1902, the defendant bought from him three bundles of fodder for which he paid two nickels, and on the 1st of August, same year, he bought a piece of tobacco, for which he paid one nickel. Mr. J. H. Brown was near by when defendant bought and paid for the fodder. These three nickels this witness turned over to his employer, M. H. Reed, and says that "after a few days we mailed these three nickels to W. H. Forsyth, at Dallas, Texas." Witness M. H. Reed states, "These three nickels were sent by me to W. H. Forsyth, at Dallas, Texas, between the 3d and 7th of August, 1902." The bill of exceptions shows these three nickels were identified as the three nickels passed by defendant to Dee Simpson, and were satisfactorily shown to be counterfeit. The defendant, testifying on his own behalf, said:

"I passed two nickels on Dee Simpson for fodder, and one nickel for tobacco, but did not know they were counterfeit. The government, I am told in the evidence, found a counterfeit nickel on my person when they arrested

me; also one genuine nickel that had some little specks of plaster of paris on it."

He accounts for his possession of all of the nickels, and states that whether they were false or genuine coins he does not know. He also accounts for the possession of plaster of paris and the piece of glass referred to in the testimony, and states that he never engaged in counterfeiting, never knowingly had any counterfeit money in his possession, is a poor man, is a carpenter by trade, and works for his living and the support of his family. He then proved by a number of witnesses that plaster of paris was used in numerous mechanical pursuits, such as carpenters, plumbers, and menders of broken articles, framing of pictures, etc. The defendant proved his good character as a truthful, honest, law-abiding citizen by nine witnesses. He also proved that his business was that of a carpenter.

The bill of exceptions shows that the government offered in evidence two sets of 25-cent molds and several pieces of metal, testified to and about by the two witnesses, W. H. Forsyth and F. H. Lancaster, as being on the workbench and in the tool-chest, to the introduction of which evidence the defendant objected because neither the workbench nor the tool chest had been proved to have been in the actual possession of, or under the control of, the defendant, so as, in law, to charge him with the guilty possession or control thereof, and, until such proofs were in, such molds and metal were not legally admissible in evidence against him. These objections were by the court overruled, and the said two sets of 25-cent molds, and the said babbitt, half-and-half, solder, and other metals were by the government introduced in evidence to the jury. It shows further that the court declined to submit to the jury for their consideration the fourth count in the indictment, and thereupon the government dismissed that count; and the defendant then orally requested the court to withdraw the said two sets of molds as evidence, as well as the evidence relative thereto, from the jury, as the same had become irrelevant and immaterial to the other issues joined on the remaining counts of the indictment. This motion the court declined to grant.

The assignment of errors presents substantially only two questions: Did the court err in admitting, over the objections of the defendant, the testimony of the witness W. H. Forsyth and of the witness F. H. Lancaster on the subject of the warehouse of Evans & Turner, the tool chest therein found, and the molds for making 25-cent pieces found in said box or tool chest, and the metals found in said box or tool chest? Second. Did the court err in interrupting counsel for defendant in his argument to the jury, wherein he was arguing that the count in the indictment in regard to the defendant being charged with the possession of the molds for counterfeiting quarter-dollar pieces had been dismissed by the court, and therefore the evidence that had been adduced to support that count went out of the case, even as said counts had gone out, and could not be considered by the jury as touching the other counts in the indictment?

The distinguished counsel who represented the defendant below, and who has filed an able brief in this court, says that the first of these alleged errors is well taken, because up to the time of the admission of the testimony objected to there had not been delivered to the court and jury any testimony whatever to connect the defendant Harvey F. Bryan with the warehouse, tool chest, metals, or molds, or legally charging him with the possession thereof, or, with the guilty knowledge of same, of counterfeiting money of the United States.  And further that after the government, through its accredited officer, had dismissed the fourth count, to permit the evidence just referred to to remain before and with the jury to consider in connection with other counts in the indictment for other offenses, when the other evidence had plainly and indisputably cut defendant off wholly and clearly from any responsibility whatever for or because of the existence or whereabouts of said molds and metal, or the possession thereof or any part thereof; and this, too, when said evidence was unquestionably irrelevant and immaterial to the other counts in the indictment not dismissed, and when the defendant had, by an express special, written charge, requested the court to withhold such evidence from the jury.

We are unable to concur in these suggestions of the able counsel. It appears to us from our examination of the record that no question was made, or could have been made, as to the satisfactoriness and completeness of the proof that the defendant did pass the coins charged in the first and second counts of the indictment, and that on the date mentioned he had in his possession the coins mentioned in the third count of the indictment as being spurious; that these coins were all identified, and were satisfactorily shown to be spurious; and that nothing remained to establish the guilt of the defendant as charged in these three counts of the indictment, except the intent or motive with which the three spurious coins that had been passed were passed, and the two spurious coins that were in his possession were held by him.  It seems to have been the theory of the counsel for the defendant that all the proof with reference to the tool chest and its contents, as testified to by the witnesses who examined the same, was admitted and could only have been properly admitted under the fourth count in the indictment, and that, when that count had been dismissed by the government, this proof which had been admitted in its support was necessarily by that dismission withdrawn from the case.  In reference to that count and the admission of this evidence, the counsel suggests that when the testimony was admitted it was in the nature of direct evidence introduced for the purpose of convicting plaintiff in error on the count No. 4 of the indictment.  That may very well be one of the grounds on which this testimony was admitted at the time it was admitted, and it may be conceded that it was in the nature of direct evidence to support that count of the indictment; but it by no means follows that, because it was in the nature of direct evidence to support one count in the indictment, it thereby had, or for any other reason shown in this record, lost its character as indirect evidence to illustrate the intent, and from which, with other circum-

stances, the jury could deduce the intent of the defendant in doing the acts otherwise fully established against him, charged in the counts Nos. 1, 2, and 3. The only remaining question open under these counts at the conclusion of the proof was the one of fraudulent intent or not. "And upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment. Indeed, in no other way would it be practicable in many cases to establish such intent or motive, for a single act taken by itself may not be decisive either way, but when taken in connection with the others of like character or nature, the intent or motive may be demonstrated with almost conclusive certainty." Wood v. United States, 41 U. S. 360, 10 L. Ed. 987. "Whenever the necessity arises for a resort to circumstantial evidence, either from the nature of the inquiry or the failure of direct proof, objections to testimony on the ground of irrelevancy are not favored, for the reason that the force and effect of circumstantial facts usually and almost necessarily depend upon their connection with each other. Circumstances altogether inconclusive if separately considered may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." Castle v. Bullard, 64 U. S. 187, 16 L. Ed. 424.

The deputy marshal who had the defendant and Brown in custody at the time the tool chest was opened and examined says: "Before unlocking the chest, both defendant and Brown, in answer to my question as to whose chest, replied that they both had used it; had tools in it; that it was a partnership box." Brown owned a workbench and a tool chest, both of which occupied a place in the warehouse known as the "Turner & Evans Warehouse," the front door of which was kept locked, and to it Brown had the key. The defendant testified that he and Brown worked together sometimes on jobs of carpentry; that he had some tools, and kept them in Brown's toolchest; that he had no key to the chest, and did not own, possess, or control it. The witness Lancaster had found in the defendant's house two cans that had in them some mixed plaster of paris; also a small paper sack with unmixed plaster of paris in it; also a piece of glass described, on which was a space where some object with a roundish bottom had been placed, and around this space were smears of mixed plaster of paris. They found in the tool chest two plaster of paris molds for making 25-cent pieces, and on the workbench several pieces of metal, babbitt, half-and-half, lead solder, and a small piece of metal that had been melted. One of the pieces of metal was in the tool chest, and the balance was lying loose on the workbench. They testified that babbitt metal, half-and-half, lead solder, and other metals are used in making counterfeit money. The witness Dee Simpson testified that Brown was near by when defendant bought and paid for the fodder, in payment of which he passed two of the counterfeit nickels.

The case seems to us to be one which clearly authorizes a reference to the circumstances shown by the proof objected to, because those circumstances are connected sufficiently with the established transactions of the defendant to illustrate in some measure his intent in the conduct charged against him to have been criminal, and should have been admitted, and doubtless would have been admitted, by the trial judge, even if the fourth count in the indictment had never been inserted therein; and, having been admitted, they were not, as the judge distinctly announced, withdrawn from the jury by the dismissal of the fourth count.   This being so, it was not error in the judge to arrest the argument of counsel to the jury at the time and in the manner specified in the bill of exceptions and in the assignment of errors.   On the contrary, it was the duty of the trial judge to interpose as he did.   Waldron v. Waldron, 156 U. S. 361, 15 Sup. Ct. 383, 39 L. Ed. 453.

We find nothing in Thompson v. Bowie, 4 Wall. 471, 18 L. Ed. 423, or in United States v. Ross, 92 U. S. 284, 23 L. Ed. 707, or in Xenia Bank v. Stewart, 114 U. S. 231, 5 Sup. Ct. 845, 29 L. Ed. 101, which required or authorized the trial judge in this case to exclude the evidence objected to by the defendant, or to withdraw that evidence after the dismissal of the fourth count in the indictment.

The judgment against the defendant is therefore affirmed.