**MORRIS et al. v. UNITED STATES.**

No. 9092.

Circuit Court of Appeals, Fifth Circuit.

June 11, 1940.

Rehearing Denied July 8, 1940.

Frank J. Looney, of Shreveport, La., Robert E. Cofer and John D. Cofer, both of Austin, Tex., and Maury Hughes, of Dallas, Tex., for appellants.

Harvey G. Fields, U. S. Atty., and Malcolm E. Lafargue, Asst. U. S. Atty., both of Shreveport, La., for appellee.

Before HOLMES and McCORD, Circuit Judges, and MIZE, District Judge.

MIZE, District Judge.

The appellants, T. L. Morris, L. Hugh Morris, M. N. Morris, Z. B. Freeman, and J. L. F. Beasley, were indicted along with others in the Western District of Louisiana by an indictment containing eleven counts charging them with using the mails to defraud. The defendants filed a demurrer to this indictment challenging its sufficiency and their chief grounds were that the indictment was duplicitous in that it attempted to charge two schemes to defraud in one count; that the allegations of the indictment were repugnant; that it contained prejudicial language; that it was vague and uncertain; and that it failed to charge any crime whatsoever. The indictment charged in substance that T. L. Morris, L. Hugh Morris, M. N. Morris, R. C. McCoy, Jr., H. R. O'Guinn, Z. B. Freeman, J. L. F. Beasley, American Benefit Association, The Southern Protective Union, The Guardian Benefit Association, and The Imperial Life Insurance Company, well knowing the facts in this indictment set forth, did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent representations, pretenses and promises from * * * and divers and sundry other persons to the grand jurors unknown, approximately 55,000 in number, that is to say, from the numerous classes of persons who were then desirous of obtaining policies of insurance on the lives of persons then living, either themselves or others, for the benefit of designated beneficiaries, principally of that class of aged persons who were unable to secure and obtain life insurance from any legitimate life insurance company, and particularly that class of persons who could be induced to purchase said policies by reason of the proposed low rate and lack of requirement for medical examination, and generally from the class of persons herein specified and the general public throughout the United States who could be induced to send, give and pay their money, property and other valuable things to the said defendants under the name of the American Benefit Association, The Southern Protective Association, The Guardian Benefit Association, The Imperial Life Insurance Company, and The Imperial Protective Union, and other names, all of which persons hereinafter being referred to in this indictment as the persons to be defrauded, said scheme and artifice being in substance and effect as follows: That the defendants would represent that they had organized and caused to be organized a corporation known as the National Protective Union,

a mutual insurance organization organized under the National Trade Union Charter under the Act of Congress of the United States governing the issuance of such charter, which Act has been since repealed by its home office at Washington, D. C., and that they had organized and caused to be organized a corporation charter under the non-profit statute of the State of Colorado on or about February 21, 1931, to be known and designated as the American Benefit Association, and under the non-profit statute of the State of Delaware, corporation to be known and designated as The Imperial Protective Union and the Guardian Benefit Association, for the purported purpose of enrolling as members persons desirous of obtaining insurance, and issue to said members certificates for the maximum sums of from $240 to $10,000, under so-called "plan of maximum protection at minimum cost", said certificates to require the payment by said members of such fees and premiums as the by-laws of said organizations may direct, and purporting to provide for the payment from the funds thus accumulated, after the payment of expenses, money, and benefits to the widows, orphans, heirs and devisees of the deceased members of said organization in the amount and to the extent provided for in the by-laws and for such other purposes as authorized by the laws of the United States and of the States of Colorado and Delaware governing corporations organized not for pecuniary profit; and that the said defendants would establish executive offices for said organizations in the City of Shreveport, La., and would thereafter advertise by circular letters and otherwise throughout the United States for agents and representatives to sell said memberships and benefit certificates under the names of the American Benefit Association, The Imperial Protective Union and The Guardian Association; that said defendants would then offer for sale to the persons to be defrauded throughout the United States, by and through the agents and representatives thus obtained and otherwise, the said membership and benefit certificates under the so-called "plan of maximum protection", and that said defendants would then cause to be printed, issued and distributed by United States mail and otherwise, to the persons to be defrauded, said memberships and so-called benefit certificates in the American Benefit Association, The Imperial Protective Union, and the Guardian Benefit Association, which certificates would be so worded as to induce and cause said persons to be defrauded to believe that said certificates offered maximum life insurance benefits and protection at minimum cost, as said defendants would intend said persons to be defrauded to believe at the time of the issuance thereof and at all subsequent times during the life of said members and said persons to be defrauded, and upon all occasions when the monthly and other dues and premiums would become due and payable. The indictment then alleges that it was part of the scheme and artifice that on or about April 19, 1934, the defendants would transfer to the American Benefit Association, with the exception of the liability which had previously been created by the business of the Southern Protective Union, a corporation, operating a business similar to that of the American Benefit Association, and that the defendants would, as the American Benefit Association, receive all funds due the expense fund of the Southern Protective Union. The indictment then continued to set out the numerous other parts of the alleged scheme and artifice to defraud in detail, defining the methods by which the defendants would enrich themselves at the expense of the alleged policy holders or certificate holders, and set out in detail the false representations that would be made in order to carry out the purposes of the alleged scheme. Among other things, there was alleged as a part of the scheme that the defendants having persuaded a great many persons to purchase the aforesaid membership certificates, would then appropriate to the use and benefit of the defendants and their association, in the guise of expenses, more than three-fourths of all the money collected from the members and actually used for the payments of claims less than one-fourth of all the money collected from the members, thus causing a great percentage of policy lapses, by which the defendants would benefit and the members would lose to the extent of all remittances received from such members. The defendants would then transfer the remaining members to another corporation, or organization, and repeat the procedure from time to time, by which the defendants gained large sums of money at the expense of persons trying to obtain protective insurance. The indictment then details the various false representations and promises that were made and that the defendants knew that the promises were false and

526

made with the intent to defraud; that the false representations were made without any intent on the part of the defendants of fulfilling the proposed obligation of the Association to pay to the members and persons to be defrauded any sums of money by reason of the certificates. The first count further alleged that the defendants, having devised said scheme, and artifice to defraud, and for obtaining money and property by reason of false representations and for the purpose of executing same, did unlawfully, wilfully and feloniously place and cause to be placed in the United States mails a certain envelope bearing the necessary uncanceled postage and containing a certain premium receipt to one of the parties to be defrauded, this being charged to have been mailed on or about the 20th of August, 1934.

The second count adopted the allegations of the first count, containing all the averments with reference to the scheme and artifice to defraud, etc., and then charged that on or about October 31, 1935, the defendants again used the means of addressing a certain envelope with uncanceled postage on it and mailing it for the purpose of executing the fraudulent scheme, etc.

The third count charged that the defendants on or about May 27, 1936, in substance used the same means in furtherance of the scheme to defraud, by use of the United States mails, and the other counts likewise adopted the allegations of the first count with reference to the scheme and artifice to defraud and then charges the unlawful use of the mail as hereinbefore stated in substance. It would unduly prolong this opinion to set out the indictment in detail, as it is necessarily lengthy.

The alleged scheme to defraud was large and necessarily had many angles to it. It is natural that a scheme of this magnitude would have many parts and in order to set it out properly, extensive averments were required. The indictment, however, embraces only one scheme.

The demurrer was overruled, the defendants entered pleas of not guilty, and at the first trial the jury was unable to agree upon a verdict and were discharged. The second trial was commenced on the 13th of March, which lasted until the 1st of April and the defendants here appealing were convicted. Motions for arrest of judgment were filed by each of the defendants and overruled, as was also the motion for a new trial.

■ The appellants have assigned twenty-six errors, the first of which is that the court erred in overruling the demurrer to the indictment. Appellants contend that the indictment contained or united two offenses,—one a scheme to defraud and the other a scheme or artifice to obtain money by false pretense. They further complain that the indictment was repugnant in its terms, and that it was so vague and uncertain and contradictory that it did not point out what representations were false and what were untrue. The demurrer was properly overruled.

This court, in the case of Livezey v. United States, 5 Cir., 279 F. 496, 498, passed upon the objection here urged by the appellants. In that case objection was made to the indictment upon the ground of duplicity because it charged a scheme to defraud and also a scheme to obtain money by false and fraudulent representations. In that case the court responded to the objection as follows: "We do not think the objection is tenable. It is not pointed out in argument that there is a difference between a scheme to defraud and one to obtain money by false and fraudulent representations, and we are unable to perceive any. The indictment sufficiently charges both a scheme to defraud and the use of the mails." Pertinent authorities also are: United States v. Stever, 222 U.S. 167, 32 S.Ct. 51, 56 L.Ed. 145; Troutman v. United States, 10 Cir., 100 F.2d 628.

■ There is no merit in the contention of the appellants that the terms of the indictment are repugnant or vague and uncertain. There is no repugnancy in the terms of this indictment and while it is long and goes into detail, yet this was necessary because of the magnitude of the scheme and the number of persons sought to be defrauded. The alleged scheme, which the defendants themselves devised, was very complex in its nature, and was by them shrewdly conceived. Yet, after all, it was one single scheme, entered into by all the defendants and was to be executed through various corporations organized by them. The court in the case of Sunderland v. United States, 8 Cir., 19 F.2d 202, 207, said: "Setting out the various means did not render the count duplicitous." See, also, Colburn et al. v. United States, 8 Cir., 223 F. 590; Bogy v. United States, 6 Cir., 96 F.2d 734.

■ The test of the sufficiency of the indictment is that it alleges acts and facts.

which constitute the offense, and is direct and certain as to the parties and the particular offense charged; that the indictment is not impaired by the subsequent statement therein of the facts and circumstances, unless such statement of itself constitutes a negation of any crime. Brady v. United States, 10 Cir., 24 F.2d 397. Other applicable authorities are: United States v. Littlejohn, 7 Cir., 96 F.2d 368; United States v. Minnec, 7 Cir., 104 F.2d 575; Sconyers v. United States, 5 Cir., 54 F.2d 68; Worthington v. United States, 7 Cir., 64 F.2d 936; Whitehead v. United States, 5 Cir., 245 F. 385; Turner v. United States, 8 Cir., 32 F.2d 126; McConkey v. United States, 8 Cir., 171 F. 829; Federal Trade Commission v. Standard Educational Society et al., 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141; United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619.

The appellants rely upon the authorities of: United States v. Young, 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548; Moore v. United States, 7 Cir., 2 F.2d 839; Dyhre v. Hudspeth, 10 Cir., 106 F.2d 286; Shaddy v. United States, 10 Cir., 30 F.2d 340; Streep v. United States, 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365; Corliss v. United States, 8 Cir., 7 F.2d 455; Sunderland v. United States, 8 Cir., 19 F.2d 202; Beck v. United States, 8 Cir., 33 F.2d 107. These authorities do not support their contention, but on the contrary the Sunderland case and the Young case condemn the contentions here made by the appellants. The lower court did not err in overruling the demurrer.

Assignments of error 2 and 3 are based upon the same contentions as were made against the sufficiency of the indictment, No. 2 being based upon a motion to quash the indictment and No. 3 based upon the refusal of the court to sustain the motion in arrest of judgment, in which motion it was asserted that the conviction of the appellants should be set aside for the reason that the indictment charged no crime. These assignments are without merit for the reasons hereinbefore shown in disposing of the first assignment of error.

■ The fourth assignment of error relied upon by the appellants is based upon the fact that the name drawn from the jury box for jury service was one E. P. Emmons, but that in truth and in fact one W. P. Emmons appeared and served and was questioned on his voir dire as to whether or not there was any other Emmons living at his post office address, and that he did not disclose that one E. E. Emmons lived there, and that only after the trial did the appellants or their counsel have an opportunity to investigate and learn of E. E. Emmons. This point was raised upon the motion for a new trial. The records show that juror W. P. Emmons was served by registered mail as E. P. Emmons, due to a typographical error in copying his name. The record on the original list was W. P. Emmons, with correct post office address; that W. P. Emmons was the man whose name was on the original jury list and is the one who was actually served with the subpoena. The court below committed no error in overruling the motion for a new trial on this ground. Chadwick v. United States, 6. Cir., 141 F. 225. Unless there has been an abuse of discretion in determining the competency of jurors, the trial court's judgment will not be disturbed. Lias et al. v. United States, 4 Cir., 51 F.2d 215. The court below did not abuse this discretion.

Assignments of error 6 to 9, inclusive, and 11 to 21, inclusive, are presented by appellants and discussed together. They are based upon evidence admitted over the objection of appellants that the companies referred to by witnesses or evidenced by copies of policies produced were not named in the indictment; that some of the incidents raised by the assignments of error occurred after the indictment was found and in some instances after the first trial of the appellants under the indictment. These assignments of error are in fact substantially the same and raise the same point of law.

■ Assignment No. 5, as an illustration of the type of these assignments, was an objection made by the appellants to the testimony of one M. E. Newell, a government witness who identified a letter from the Interstate Claim Service regarding a claim against the Interstate Protective Association and the letter introduced in evidence. Objection was made to this by appellants because the Interstate Protective Association was not a defendant and was not mentioned in the indictment. It was shown that the Interstate Claim Service handled some of the claims for the National Protective Union of Colorado and Interstate Protective Association of Delaware, The Lone Star State Life Insurance

Company and The Home Life Insurance Company. Policyholders were transferred from the corporation named in the indictment to The National Protective Union of Colorado, the Interstate Protective Association of Delaware, The Lone Star State Life Insurance Company and The Home Life Insurance Company. The court overruled the objection, but stated that the appellants, of course, could not be convicted of mailing a document that is not specifically charged in the indictment, but that this letter, along with other documents of similar import, are admissible as throwing light upon the nature of the transaction and in support of the contention of the government that there was a fraudulent scheme. The court was correct in its ruling. Colt v. United States, 8 Cir., 190 F. 305, 307. In that case the court said: "Evidence of other offenses committed by the accused having no connection with or relation to that for which he is upon trial is not, of course, ordinarily admissible. But, when the offense charged is one that involves the fraudulent intent or motive of the accused, it is permissible in criminal as well as in civil cases to introduce evidence of other acts and transactions of the party upon trial of a kindred nature to show his intent or motive in the particular act directly under investigation, even though it may show the commission of other offenses than that for which he is being tried. Indeed, in no other way, in many cases, could the fraudulent intent or motive of the accused be established, for the single act under investigation might not alone be decisive either way; but when that act is considered in connection with other transactions of a like or similar character occurring at or near the same time, which also involve the intent or motive of the party, the intent and motive in doing the act under investigation may thus be made to appear with almost conclusive certainty. Wood v. United States, 16 Pet. 342–359, 10 L.Ed. 987; Moore v. United States, 150 U.S. 57–60, 61, 14 S.Ct. 26, 37 L.Ed. 996; Williamson v. United States, 207 U.S. 425–451, 28 S.Ct. 163, 52 L.Ed. 278; Thomas v. United States [8 Cir.], 156 F. 897–911, 84 C.C.A. 477, 17 L.R.A. (N.S.) 720; Bryan v. United States [5 Cir.], 133 F. 495–500, 66 C.C.A. 369; Olsen v. United States [8 Cir.], 133 F. 849–854, 67 C.C.A. 21; Commonwealth v. Jackson, 132 Mass. 16; People v. Harris, 136 N.Y. 423, 33 N.E. 65–74." See, also, Riddell v. United States, 9 Cir., 244 F. 695;

Samuels v. United States, 8 Cir., 232 F. 536, 146 C.C.A. 494, Ann.Cas.1917A, 711; Tincher v. United States, 4 Cir., 11 F.2d 18.

■ It is now well settled that as to crimes wherein fraudulent intent is one of the material allegations of the indictment, evidence of other and similar adventures of the defendant at or about the same time is properly admissible as bearing on the question of intent. In the case at bar the evidence offered, to which objections were overruled, related to corporations not specifically charged in the indictment, but were corporations which were connected with the corporations mentioned in the indictment by the transfers of policyholders or funds from the corporations named in the indictment to the corporations from which the evidence was admitted. There was a causal connection between those mentioned in the indictment and the others concerning which the evidence was admitted. Counsel for the appellants relied largely upon the authorities of Holt v. United States, 10 Cir., 94 F.2d 90, 94, and Gart v. United States, 8 Cir., 294 F. 66. The Holt case has no application and the Gart case recognized the principle we have herein announced, but announced the correct principle of law to the effect that scope and purpose of testimony concerning similar offenses is limited. That is true, but the court in that case specifically held that when the criminal intent of the defendant is indispensible to the government in the proof of its case, then proof of like offenses about the same time as that at which he is charged is admissible. In the instant case the court in its charge to the jury properly limited the effect of this testimony. See Tinsley v. United States, 8 Cir., 43 F.2d 890.

■ Assignment of error No. 6 raises the additional point that a premium receipt issued November 25, 1938 by Imperial Life Insurance Company was dated after the alleged offense charged in the indictment. Under the authorities cited herein with reference to assignment of error No. 5, this assignment is without merit. It is answered specifically by Hatem v. United States, 4 Cir., 42 F.2d 40, 41; 282 U.S. 887, 51 S.Ct. 103, 75 L.Ed. 782, wherein certiorari was denied. In that case the objection was made to the introduction of testimony with reference to acts of the defendants subsequent to those charged in the indictment. In that case the court said: "Such evidence was clearly admissible,

provided that the jury was properly charged by the judge below, as to the purpose for which it was introduced, and as to the consideration that the jury should give it. It is a long-established doctrine that in cases involving fraud, or the intent with which an accused does an act, 'collateral facts and circumstances, and his other acts of a kindred character, both prior and subsequent, not too remote in time, are admissible in evidence.' Moffatt v. United States [8 Cir.], 232 F. 522. See, also, Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91."

■ Assignments of error 7 to 9, inclusive, and 11 to 21, inclusive, raise substantially the same propositions of law and are without merit. There is raised, however, under assignment No. 14 the additional ground that a witness for the government who was the examiner for the Insurance Department of Texas had made an examination of the Consolidated Life Insurance Company and was permitted to testify from the examination of the report that he had made from the records of the company. The additional ground of the objection was made that the witness was testifying not from the original, but from a memorandum made at the time of his examination of those records. There is no merit in this additional ground of objection. Mitchell v. United States, 9 Cir., 23 F.2d 260. In his work in connection with his department the witness was duly sworn as an official and this work was performed in the course of his official duties. The court below committed no error in overruling this objection.

■ Assignment of error No. 10 is predicated upon the ruling of the court below in admitting, over the objections of the appellants, the decision of the Supreme Court of Colorado in the case of International Service Union Company v. People ex rel. Wettengel, 101 Colo. 1, 70 P.2d 431, which became final on July 12, 1937, being after the date of the indictment and after the first trial of the defendants. This decision of the Supreme Court of Colorado was based upon a suit to cancel a charter under the non-profit law of Colorado. The original petition of the Attorney General of Colorado was granted by the District Court in that state in 1936, prior to the filing of the indictment in the present case. The decision of the District Court was affirmed by the Supreme Court of Colorado.

It is shown by the bill of exceptions that the American Benefit Association and National Protective Union under the federal charter are named in the present indictment. The National Protective Union of Colorado was organized by the transfer of the policyholders from the National Protective Union under the federal charter. The American Benefit Association and the National Protective Union of Colorado had charters under the non-profit law of Colorado. The Attorney General of that state began an investigation of the American Benefit Association and the National Protective Union of Colorado, and similar insurance concerns, in 1936, which resulted in filing the suit for the cancellation of the charter of the International Service Union Company, which was also operating under the non-profit law of Colorado. The insurance organizations operating under the non-profit law of Colorado were then put on notice that the Attorney General would seek to have their charters canceled. The court, therefore, committed no error in permitting the introduction of that decision. It simply declared what the law of the State of Colorado is, which was in effect when the activities of the defendants were in progress. Defendants, of course, are charged with knowledge of the law of the state.

Assignments of error No. 22 and No. 23 raise the same points of law substantially as were raised by assignments 5 to 9, and are without merit for the reasons hereinbefore stated.

■ Assignment of error 24 is predicated upon the action of the trial court in sustaining the objection of the government to a question propounded on cross-examination by the appellants to a government witness as to whether he did not know that he could have made application for an appointment of an auditor to audit the books of the American Benefit Association. This government witness had testified that he had been refused permission by the American Benefit Association, one of the defendants, to audit the books of that company. There was no error in the action of the court in sustaining the objection. It is true in the case of Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 545, 55 L.Ed. 771, Ann.Cas.1912D, 558, the Supreme Court of the United States said, "It [a corporation] cannot resist production upon the ground of self-crimination. Although the object of the

530

inquiry may be to detect the abuses it has committed, to discover its violations of law, and to inflict punishment by forfeiture of franchises ‍or otherwise, it must submit its books * * * to duly constituted authority when demand is suitably made." Yet the government in the instant case did not choose to follow that right it had, and in the trial of this case it was immaterial, in so far as the appellants were concerned, that the government had chosen not to appeal to the court for the appointment of the auditor.

Assignments 25 and 26 are based upon exceptions to the court's charge to the jury. There is no merit in either one of these assignments. The court's charge was fair, clear and distinct, and it presented the issues to the jury fully. The court in its charge was cautious to protect the rights of the defendants and particularly limited the effect of evidence that was admissible on only one phase of the case. It was not necessary for the government to show that there was an intent on the part of the defendants to effect their fraudulent scheme by use of the mails, or that it was intended to be executed by the use of the mails. It is sufficient to constitute the crime if in the execution of the scheme to defraud the mails are in fact used. Tincher v. United States, 4 Cir., 11 F.2d 18; Bogy v. United States, 6 Cir., 96 F.2d 734; Monte Hart et al. v. United States, 5 Cir., 112 F.2d 128.

We find no reversible error in the judgment of the court below and it, therefore, is affirmed.