WEISS v. UNITED STATES.
No. 9735.

Circuit Court of Appeals, Fifth Circuit.
June 9, 1941.

---

[2] Johnson v. Zerbst, supra; Cf. notes of Judge Fitzhugh in United States v. Bollman, 24 Fed.Cas. 1189, 1191, No. 14,622.

SIBLEY, Circuit Judge, dissenting.

Hugh M. Wilkinson, of New Orleans, La., for appellant.

Malcolm E. Lafargue, U. S. Atty., of Shreveport, La., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, Circuit Judge.

The appellant was convicted on the first three counts of a nine-count indictment, all charging the use of the mails to defraud except the last which charged a conspiracy to commit the crimes set forth in the first eight counts.[1] He contends (1) that he was tried simultaneously on two separate and distinct schemes to defraud, (2) that the trial court imputed causation to the defendant in the use of the mails by other persons, (3) that irrelevant and prejudicial matter was admitted in evidence, and (4) that the motion for a new trial should not have been denied.

The scheme alleged in the indictment arose out of a contract to replace the administration building of the Louisiana Polytechnic Institute which had been destroyed by fire. Weiss was employed as one of the architects, and was to receive as compensation for his services a percentage of the whole cost of the construction. As architect, he and his associates undertook the duties of preparing the plans and specifications, drawing the contract between the contractor and the State Board of Education, supervising and inspecting the actual construction, serving as technical advisor to the owner, issuing certificates for expenses and contract payments as the work progressed, and, in general, representing the employer to assure the proper performance of the contract as inexpensively as possible.

The indictment charged that Weiss schemed to defraud the State of Louisiana by using his position of trust, confidence, and responsibility fraudulently to increase the contract price of the building in the sum of $27,000, and to include fictitious items for extras in the sum of $28,656.04; that the State of Louisiana, in reliance upon the honesty and good faith of its representative, paid out the sums so fraudulently demanded to its damage.

Count one of the indictment, upon which Weiss was convicted and sentenced to a term of five years in the penitentiary, charged the mailing by Weiss of his architect's certificate, calling for the payment of $3,000 to the firm of Weiss, Dreyfous and Seiferth for services rendered, in furtherance of and for the purpose of executing the scheme to defraud. Counts two and three, upon which Weiss received suspended sentences, dealt with his causing an architect's certificate, issued by him for $74,818.71, to be mailed from New Orleans, La., to Ruston, La., and with causing the same certificate to be mailed from Ruston, La., to the auditor of the State of Louisiana at Baton Rouge for payment, all in furtherance of and for the purpose of executing the scheme to defraud.

The Weiss firm was associated with the firm of Neild, Somdal & Neild of Shreveport, La., and they shared the architectural duties. Weiss prepared the plans and specifications; Neild supervised and inspected the construction of the building. A bid submitted by the contracting firm of

---

[1] § 215, Criminal Code, 18 U.S.C.A. § 338; § 37, Criminal Code, 18 U.S.C.A. § 88.

Caldwell Bros. & Hart, in the sum of $264,-482.13, was accepted under an agreement that the bid would stand until the money to fulfill the contract was made available. Shortly after the bid was accepted, Weiss prepared a written contract to cover the transaction, in which the contract price was stipulated to be $291,482.13. This was $27,000 more than the bid which was accepted. Weiss explained that Monte Hart, a member of the contracting firm of Caldwell Bros. & Hart (who was jointly indicted with Weiss in this case, and who committed suicide prior to the trial), told him that, in view of the delay in procuring the money to begin operations, the intervening rise in price of materials and supplies, and the fact that the accepted bid price was approximately $30,000 less than the next lowest bid, Governor Leche had agreed to increase the contract price in the amount of $27,000. Weiss further testified that he made an appointment with Governor Leche for the purpose of having Hart's representation confirmed, that Leche confirmed it, and that he then delivered a copy of the contract, with the increased price included therein, to George W. Bond, president of L. P. I., for delivery to H. H. White, the president of the State Board of Education. It was Weiss' impression that he told Bond about the change in the contract. Bond denied he was so told, and Leche denied that he either authorized the increase in the contract price to Hart or confirmed it to Weiss.

Before the written contract was executed, Neild asked Weiss for a copy of it. When it had been executed, Weiss so advised Neild, but he never sent him a copy. The contract was not recorded, as is required by Louisiana law,[2] until approximately a month after its execution, when President Bond asked why it did not appear of record. When White signed the contract in behalf of the State Board of Education he did not notice that the price had been raised.

Although the Neild firm was in charge of the actual construction, the Weiss firm issued every certificate upon which progress payments were made. In May, 1937, Monte Hart procured from Weiss a certificate calling for a final payment of $74,-818.71, which sum, when added to the previous payments made, aggregated a total of $335,437.21, which was $43,955.08 in excess of the increased contract price. This excess purported to be the amount due for extras included in the construction, and was $28,656.04 in excess of the legitimate charge therefor. The itemized statement of the extras so charged was dictated by Hart, was made up in part of fictitious items, and was accepted and approved by Weiss without any investigation. Checks were issued and paid by Louisiana Polytechnic Institute, upon presentation of the certificates, without knowledge of any acting official of the institution that they were in any part fraudulent.

█ To meet the proof offered by the Government concerning the transaction, it was not denied that the State of Louisiana had been defrauded, but Weiss claimed that, on the matter of the fictitious extras, he had been taken advantage of by Hart, whom he could and did respect and believe to be an honest man; that, due to the extreme stress of business duties at that time, he had carelessly overlooked checking the report of the work submitted by Hart. Weiss' intent was thereby directly injected into the case, and, to inform the jury on this question, the Government was permitted to prove other transactions occurring at the same period of time, in which Weiss was architect and Caldwell Bros. & Hart were contractors, involving public buildings for the State of Louisiana, in which the State was defrauded. This proof clearly comes within a recognized exception to the general rule of irrelevancy.[3] It was also proved that Weiss indorsed a check for $75,000 and delivered it to Dr. James Monroe Smith, the president of Louisiana State University, under circumstances which would have aroused suspicion in the mind of any reasonable business man. This incident occurred during the same period of time, involved the same people and the same fund of money, and was so closely akin to the offenses of the indictment as to have a direct bearing upon the intent of the accused. Several of the transactions testified to dealt with frauds occurring at Louisiana State University from which

---

[2] Art. 2775, La.Civil Code.

[3] Samuels v. United States, 8 Cir., 232 F. 536, Ann.Cas.1917A, 711; Harris v. United States, 2 Cir., 273 F. 785; United States v. Dubrin, 2 Cir., 93 F.2d 499, certiorari denied 303 U.S. 646, 58 S.Ct. 644, 82 L.Ed. 1107; Morris v. United States, 5 Cir., 112 F.2d 522; Wharton, Criminal Evidence, Sec. 345.

Weiss, Caldwell Bros. & Hart, and Dr. Smith derived a profit.

The indictment charged Weiss with scheming to defraud the State of Louisiana, its educational institutions, and its taxpayers out of $56,914.42 by fraudulently increasing the contract price as aforesaid, and by filing and collecting a claim for fictitious extra work. This indictment charged but one scheme to defraud, the proof showed but one scheme, and the jury convicted upon charges that only one scheme was alleged. A "scheme" is defined by Webster's New International Dictionary as "a combination of thoughts, theories, or the like, connected and adjusted by design; a systematic plan; a system." Though the two fraudulent overcharges here made were approximately a year apart in point of time, it appears from the evidence that these men had devised a systematic plan, and that the transactions complained of were separate steps in the execution of the same. The indictment charged and the proof established but one scheme, and it was not invalidated by the plurality of moves taken in its accomplishment.[4]

It is contended that causation was wrongfully imputed to Weiss in the matter of the mailings in connection with the certificate for $74,818.71; that Weiss delivered the certificate to Hart by hand at a time when, and under such circumstances that, he reasonably supposed the certificate would be delivered in person and not by mail. This certificate was actually caused to be transmitted through the mails by Hart, yet the cause of the mailing was not erroneously imputed to Weiss. The conviction under the first count, upon the facts alleged and proven, established, in furtherance of the scheme to defraud, a concert of action between Hart and Weiss in devising, executing, and profiting from the scheme to defraud. The acts of Hart in furthering the common criminal enterprise were the acts of Weiss, and each was the agent of the other.[5]

After the completion of the trial in the court below a motion for a new trial was made on the ground of after-discovered evidence in connection with the indorsement and delivery of the $75,000 check by Weiss to Smith. The motion was overruled. The evidence offered merely tended to corroborate the testimony of Weiss which had been submitted to the jury in the trial of the case. It concerned a collateral matter which was, at most, cumulative evidence. The full explanation of the defendant was in evidence. The refusal of the motion under these circumstances cannot be said to constitute an abuse of discretion.[6]

A consideration of the natural gifts and technical ability of Weiss as an architect does not tend to exonerate him from blame; it merely enhances the tragedy of the case. A study of the record discloses that the trial court was fair in the conduct of the trial, that the case was ably defended, and that the defendant has no just ground for complaint against the procedure at the trial or the outcome thereof.

Affirmed.

SIBLEY, Circuit Judge (dissenting).

The admission of other transactions to illustrate intent was carried too far, especially as regards that with J. M. Smith. Smith was not named in the indictment, and no notice was given of any purpose in the trial to bring him in. It was not clearly shown with what intent Weiss dealt with Smith, so as to afford an inference of like intent in dealing with Hart. In the motion for new trial it was clearly shown that Weiss got nothing in the Smith transaction, and the suspicion that he did was disproved by new and indisputable evidence. I think Weiss ought to have a new trial.

4 Sunderland v. United States, 8 Cir., 19 F.2d 202; Sconyers v. United States, 5 Cir., 54 F.2d 68; Belt v. United States, 5 Cir., 73 F.2d 888; Morris v. United States, 5 Cir., 112 F.2d 522; Leche v. United States, 5 Cir., 118 F.2d 246.

5 Davis v. United States, 5 Cir., 12 F.2d 253; Sasser v. United States, 5 Cir., 29 F.2d 76; Belt v. United States, 5 Cir., 73 F.2d 888; Alexander v. United States, 8 Cir., 95 F.2d 873.

6 Casey v. United States, 9 Cir., 20 F.2d 752; Id., 276 U.S. 413, 48 S.Ct. 373, 603, 72 L.Ed. 632; Dowling v. United States, 5 Cir., 49 F.2d 1014; Prisament v. United States, 5 Cir., 96 F.2d 865; 28 U.S.C.A. § 391, 40 Stat. 1181.