Arthur E. SCHAEFER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15961.

United States Court of Appeals
Eighth Circuit.

April 16, 1959.

Rehearing Denied May 8, 1959.

751

the verdict of a jury returned May 11, 1957, after a trial which commenced on April 22, 1957. Schaefer and five other defendants were charged, in an indictment containing twenty-four separate counts, with having devised a scheme to defraud and having used the United States mails for the purpose of executing it, in violation of the Mail Fraud Statute, 18 U.S.C. § 1341. All of the defendants entered pleas of not guilty. The jury acquitted Schaefer's codefendants and found Schaefer not guilty upon all counts submitted to the jury except Count VIII. He has been at liberty on bail, and his time to perfect his appeal, notice of which was filed June 5, 1957, has been extended from time to time. This Court permitted him to prosecute his appeal as a poor person and appointed Mr. Morris A. Shenker, of the St. Louis, Missouri, bar, to represent him. We are indebted to Mr. Shenker for a brief and argument, on Schaefer's behalf, containing a careful and accurate statement of the facts and presenting everything which reasonably can be urged in Schaefer's favor on this appeal.

The fraudulent scheme, as alleged in the indictment, consisted of inducing persons throughout the United States, by means of false and deceptive representations with respect to vending machines for razor blades and the income which could be derived from their operation, to purchase and pay for such machines, which in many instances were never delivered,[1] and, if delivered, were not as represented and did not and could not produce any such amount of income as it was represented the purchaser might expect.

■■ Schaefer asserts that the evidence was inadequate to support his conviction and that the District Court erred in denying his motion for a directed verdict, made at the close of the evidence. However, our examination of the record convinces us that the issues whether the scheme devised and operated by Schaefer in St. Louis, Missouri, in the name of

Morris A. Shenker, St. Louis, Mo. (appointed by the Court), for appellant.

William C. Dale, Jr., Asst. U. S. Atty., St Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., was with him on the brief), for appellee.

Before SANBORN, JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal by Arthur E. Schaefer from a judgment and sentence of imprisonment and a fine imposed on May 29, 1957. The judgment was based upon

---

1. 7,550 machines were sold, and 6,800 delivered.

Modern Merchandising Corporation or Associated Merchandisers, Inc., each of which was, in effect, Schaefer's alter ego, was fraudulent, and whether the mails were used for the purpose of executing the scheme, were issues of fact for the jury, and not issues of law for the court. Schaefer's defense was that his scheme was honestly conceived and honestly conducted, and was not a scheme to defraud, even though it failed and caused those who ordered and paid for vending machines substantial losses. We find it unnecessary to detail the Government's evidence, which, of course, must be viewed in the aspect most favorable to it. The only unusual feature of the case was the acquittal by the jury of the defendants other than Schaefer upon all counts and his conviction upon only the eighth count.

Count VIII of the indictment charged that, for the purpose of executing the fraudulent scheme alleged in the indictment, Schaefer and the other defendants caused to be placed in the mails an envelope addressed to Elgin W. Sanderson, 19 Pine Street, Concord, New Hampshire.

The evidence relating to Count VIII was substantially as follows: An advertisement placed in a newspaper by Modern Merchandising Corporation, operated by Schaefer, was answered by Sanderson. Following that, Sanderson was called upon by Murray Moss, a salesman for the corporation, on September 15, 1955. He told Sanderson that he could make money by buying the vending machines, and showed him a sales brochure, or "pitch book", which was carried by all of Schaefer's salesmen and which contained pictures and articles relating to the vending machines and their operation. Sanderson was told by Moss that, after the purchase of the machines, they would be delivered in three or four weeks, and that, upon notification of their receipt, a location man would be sent by the corporation to assist in finding favorable locations for the machines. Sanderson was also told by Moss that it was possible for ten machines to earn around three hundred dollars a month. Sanderson purchased ten machines, for which he paid $2,249.00, and signed a contract purporting to exonerate the corporation from responsibility for representations or promises not contained in the contract. Sanderson later received a letter from the Modern Merchandising Corporation, dated November 11, 1955, stating that the production schedule had not kept pace with orders, and that his contract was in the next group set for completion. Like many others, Sanderson received no machines and no refund of his money. There was substantial evidence to support Schaefer's conviction under Count VIII.

It is contended that the trial court committed reversible error (1) in failing to declare a mistrial because of misconduct of Government counsel in asking a question on cross-examination of Schaefer; (2) in instructing the jury with respect to the credibility of witnesses; (3) in charging the jury that they could find Schaefer guilty if they found that any one of the representations alleged in the indictment was proved; and (4) in refusing to strike out certain testimony.

Schaefer also contends that "The verdict of the jury acquitting appellant on 21 counts of the indictment and acquitting Murray Moss and the other defendants on Count 8 of the indictment warranted appellant's acquittal on Count 8, and the verdict of guilty on Count 8 was accordingly void because it was repugnant and inconsistent to the other jury findings."

■■■ The record shows that during the extended cross-examination of Schaefer relative to the inventory of the Modern Merchandising Corporation, reported to Dun and Bradstreet to amount to $30,000, he was interrogated about certain peanut-vending machines which he had testified were a part of the inventory, as follows:

"Q. (By Mr. Boecker [counsel for the Government]) Mr. Schaefer, the peanut machines that you were talking about before the lunch recess

were not your property, and were not the property of Modern Merchandising Corporation, were they? A. You mean the action type display merchandiser I described?

"Q. The Illinois Continental machines that you referred to which you said were about 300 in number, which I understood to be peanut machines. A. Yes; well, we had more than that, but 300 of them belonged to me.

"Q. Isn't it true that those were embezzled and the real owner was Mart Wilson? You forged his name to obtain those machines, isn't that true? A. I said 300 of them were mine. I didn't say the others I had in my basement were mine. They are not his.

"Mr. Shaw [counsel for Schaefer]: I'm going to object to the choice of words 'embezzled' and 'forged'.

"The Court: Be overruled. He's already answered.

"Mr. Shenker [counsel for defendant Dardick]: * * * defendant Dardick will object to the use of those words, and in view of this type of cross-examination we will ask at this time for a mistrial and a severance be granted to the defendant Dardick, and that he may be tried alone.

"The Court: Be overruled.

"Mr. Glazer [counsel for defendant Moss]: Same objection and request as to the defendant Moss.

"Mr. Roth [counsel for defendant Doolin]: Same objection as to the defendant Doolin.

"The Court: Same ruling. The witness has already answered."

Obviously the words "embezzled" and "forged" should not have been used by Government counsel, but whether their use, in view of Schaefer's answers and the surrounding circumstances, called for a mistrial was for the trial court to determine in the exercise of a sound judicial discretion. The importance of avoiding mistrials for trivial or inadequate reasons in cases such as this is obvious and was adverted to by this Court in Bowen v. United States, 8 Cir., 153 F.2d 747, 752. The declaring of a mistrial during the cross-examination of Schaefer would, as things turned out, have seriously prejudiced all of his co-defendants and would have put all parties to the trouble and expense of a second trial, without any assurance that a second trial could benefit Schaefer or any other defendant. A trial judge is always in the best position to determine whether such an incident as occurred in this case, which it was impossible to anticipate or guard against (compare, Cochran v. United States, 8 Cir., 41 F.2d 193, 206, and Reistroffer v. United States, 8 Cir., 258 F.2d 379, 392–393), calls for a mistrial. Only a clear and obvious abuse of a trial court's discretion in refusing a mistrial will justify a reversal of a case by an appellate court upon a cold record. As was said in Goldstein v. United States, 8 Cir., 63 F.2d 609, 613, "It is impossible to gather from the cold record * * * the atmosphere of the trial itself, the manner in which the words were spoken, or the probable effect, if any, which they had upon the merits of the controversy." See, also, Baker v. United States, 8 Cir., 115 F.2d 533, 542–543. The trial court in the instant case did not commit reversible error in refusing to declare a mistrial.

■ Schaefer criticises the instruction of the court to the effect that it was not incumbent upon the Government to prove each and every representation alleged in the indictment, but was incumbent upon it to prove one or more or a sufficient number of the representations to indicate and show that the scheme alleged was actually set up, and that any defendant could be held responsible for the operation of the scheme if he was shown to have intentionally acted in some way to further its operation, with knowledge that it included the making of misrepresentations.

The instruction was similar to that sustained in Simons v. United States, 9

Cir., 119 F.2d 539, 549, certiorari denied 314 U.S. 616, 62 S.Ct. 78, 86 L.Ed. 496. See also: Cowl v. United States, 8 Cir., 35 F.2d 794, 798; Baker v. United States, 8 Cir., 115 F.2d 533, 542; Holmes v. United States, 8 Cir., 134 F.2d 125, 133, certiorari denied 319 U.S. 776, 63 S.Ct. 1434, 87 L.Ed. 1722. We find no error in this challenged instruction.

█ It is unnecessary to set out the instructions of the trial court relative to the tests for determining the credibility of witnesses. Taken as a whole, we regard the instructions as neither inaccurate, erroneous nor prejudicial to Schaefer, whose credibility was left for determination by the jury The statement to the effect that the defendants "who took the stand" had a vital interest in the case and that was to be considered in determining their credibility was justified, as was also the instruction that the jury might, at their option, disregard the evidence of any witness who they determined had willfully testified falsely to a material fact, but could believe as much of the testimony of such a witness as they found reasonable or corroborated by other credible evidence in the case.

█ The contention that the court erred in admitting the evidence of purchasers concerning conversations with salesmen not alleged to be parties to the scheme charged, we regard as without merit. The testimony was admissible as tending to prove that the scheme was what the Government claimed it to be, namely, a scheme to defraud by means of false representations and promises. See Reistroffer v. United States, 8 Cir., 258 F.2d 379, 387–388 and cases cited; Grell v. United States, 8 Cir., 112 F.2d 861, 873; Morris v. United States, 5 Cir., 112 F.2d 522, 527–528.

██ Schaefer asserts that the court erred prejudicially in refusing to strike the testimony of Phyllis Sandweiss, an office employee of the Modern Merchandising Corporation, that the signature "Walter Hasemann" on a letter in evidence as Exhibit 79A was in the handwriting of Schaefer, and that the signature "K. J. Winschell" on each of two other letters in evidence was also in Schaefer's handwriting. Since the evidence showed that the witness had worked in Schaefer's office from January 1955 to January 1956 and was familiar with its operations, her evidence was not wholly without foundation merely because she did not see the letters signed and was not a handwriting expert. Moreover, Schaefer himself testified that it was quite possible that in the general routine of the business he signed some form letters with the names "Winschell" and "Hasemann". We fail to see that the admission of this evidence of Phyllis Sandweiss was either erroneous or prejudicial. The weight of the testimony was for the jury to determine. Without the Sandweiss evidence, the jury reasonably could infer that the mail matter referred to in Count VIII, to Sanderson came from Schaefer, who concededly was operating the business. See and compare, Gantz v. United States, 8 Cir., 127 F.2d 498, 501–502.

█ The contention that the jury could not lawfully acquit all of Schaefer's codefendants on all counts submitted and acquit Schaefer on every count except the eighth, cannot be sustained. In Dunn v. United States, 284 U.S. 390, at pages 393–394, 52 S.Ct. 189, at pages 190, 191, 76 L.Ed. 356, Mr. Justice Holmes, speaking for the court, said:

"Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. Latham v. The Queen, 5 Best & Smith 635, 642, 643; Selvester v. United States, 170 U.S. 262, 18 S.Ct. 580, 42 L.Ed. 1029. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as *res judicata* of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. As

was said in Steckler v. United States, 2 Cir., 7 F.2d 59, 60:

"'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'

"Compare Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185.

"That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."

In United States v. Dotterweich, 320 U.S. 277, at page 279, 64 S.Ct. 134, at page 135, 88 L.Ed. 48, the Supreme Court said:

"* * * Equally baseless is the claim of Dotterweich that, having failed to find the corporation guilty, the jury could not find him guilty. Whether the jury's verdict was the result of carelessness or compromise or a belief that the responsible individual should suffer the penalty instead of merely increasing, as it were, the cost of running the business of the corporation, is immaterial. Juries may indulge in precisely such motives or vagaries. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356."

See, also, Hoag v. State of New Jersey, 356 U.S. 464, 472, 78 S.Ct. 829, 2 L.Ed. 2d 913.

■ This Court, since the decision in Dunn v. United States, supra, has repeatedly ruled that inconsistency in a verdict on the separate counts of an indictment or information does not entitle a convicted defendant to a reversal of a judgment or to a new trial. Foshay v. United

States, 8 Cir., 68 F.2d 205, 217; Muench v. United States, 8 Cir., 96 F.2d 332, 336; Pilgreen v. United States, 8 Cir., 157 F. 2d 427, 428; Downing v. United States, 8 Cir., 157 F.2d 738, 739–740; Anderson v. United States, 8 Cir., 262 F.2d 764, 770–771.

While we may not speculate as to what considerations influenced the jury to acquit all of Schaefer's codefendants and to convict Schaefer under only one count of the indictment (Dunn v. United States, supra, pages 394 and 407 of 284 U.S., 52 S.Ct. 189, 76 L.Ed. 356), we note that he testified that he was the boss who owned and operated the Modern Merchandising Corporation, and that none of the other defendants ever had anything to say about its policy, operations, or decisions.

Our conclusion is that Schaefer had a fair trial and that the judgment appealed from is supported by substantial evidence and is valid.

Judgment affirmed.