Woodrow GRISSETTE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18881.

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1963.

Rehearing Denied March 13, 1963.

John P. Booth, Richard R. Booth, Miami, Fla., for appellant.

Robert W. Rust, Daniel S. Pearson, Edmond J. Gong, Asst. U. S. Attys., Miami, Fla., for appellee.

Before JONES and BELL, Circuit Judges, and CARSWELL, District Judge.

CARSWELL, District Judge.

Two separate indictments charged appellant with violations of internal revenue laws relating to moonshine whiskey. On his own motion the cases were consolidated for trial. This appeal is taken following his conviction on certain counts of each indictment with four errors asserted, the first two of which require exam-

ination of the evidence, the third involves alleged prejudicial remarks by the United States Attorney, and the last attacks one aspect of trial court's instruction to the jury.

We find no merit in any of these contentions and affirm the judgment of the district court.

■ First, was there a fatal variance between the conspiracy alleged in one of the indictments and the facts adduced on trial? The core of appellant's argument in this regard is that the evidence actually showed two distinct conspiracies while only one was stated in the language of the indictment. Even accepting this to be so, the law is well settled that such a variance is not necessarily fatal.

The leading case in this area is Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). It is noted initially that all of the authority presented by appellant for the proposition that such variance is fatal was decided prior to Berger. The Supreme Court at page 81, 55 S.Ct. at page 630, in that case held that the proposition that a variance is fatal *per se* "ignores the question of materiality, and should be so qualified as to make the result of the variance depend upon whether it has substantially injured the defendant." The evidence in Berger established two separate conspiracies while the indictment charged but one. The only connecting link in Berger between the two conspiracies was a person, not the appellant, who was involved in both. The Supreme Court held that Berger was not surprised by the proof nor did the proof prejudice him, noting at page 82, 55 S.Ct. at page 630:

> "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to

present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."

In short, prejudice is not assumed. Since Berger was decided in 1935 nothing has impaired its essential holding to this effect. Indeed, its concept has been reiterated consistently, although it has been made equally clear that variance between indictment and proof involving plural conspiracies and multiple defendants may also result in prejudice. Thus we have, not unexpectedly, varying results in different cases. For example, in Kotteakos, et al. v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, 1946, the Court overturned a conviction on the central proposition that the evidence there showed eight conspiracies and involved numerous participants in the different schemes and who were, except for one, different persons who did not know or have anything to do with one another. There, the Court held, the record presented a factual picture of so many different persons' varied and disconnected activities that the same jury should not have been allowed to consider the full sweep of the testimony. The next year the Supreme Court in Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154, reviewed with approval the basic holding of the Berger case, supra, and affirmed convictions after finding that the various participants all knew of and joined in the overriding scheme, clearly distinguishing the case from Kotteakos on the factual showings.

Throughout each of these cases runs the clear concern of our courts that there is a very real danger that, despite most careful instruction by the trial court, jurors in disregard of the court's direction, will transfer, consciously or unconsciously, the effect of the testimony relative to one defendant but not properly so to another. This risk obviously increases in direct ratio with the number of persons charged together, and is inherent in all mass trials, conspiracies or otherwise.

In the subject case, like Blumenthal, and like the Ninth Circuit case of Canella v. United States, 157 F.2d 470 (1946), these hazards were minimal even on the full evidence presented and were most clearly, correctly, and fully covered by the trial court in its instructions to the jury.

A brief résumé of the evidence here shows that these standards have been met and that there was no prejudice to Grissette on the conspiracy count, nor was there failure of proper proof to sustain his conviction on each of the substantive counts involving transportation, removal, and possession of moonshine whiskey, and attempt to evade the taxes imposed on such distilled spirits.

All of the dates referred to here are within the period set forth in the indictment, January 28, 1958 to and including April 15, 1958.

The evidence showed that on January 28 at approximately 7:30 A.M. two investigators observed appellant and an unidentified man walk toward the parking lot of a motel in Miami, Florida. Prior investigation by one of the officers disclosed that a green two-ton Chevrolet stake body truck, which was parked in the lot of the motel, was loaded with five-gallon cans from which emanated an unmistakable odor of moonshine whiskey. Some five minutes later Nathaniel Robinson, with Willie Clyde Holmes as passenger, drove a 1953 Oldsmobile into the lot and parked near the truck. Robinson was given the keys to the truck by the unidentified man and drove out of the lot in the truck. The truck, with Robinson driving, was later found to contain 57 five-gallon cans of non-tax-paid whiskey.

Robinson testified at the trial that he had done some prior moonshine business with appellant Grissette and that Grissette had supplied him with moonshine at $25 per five-gallon can. Robinson said that he was called on the telephone earlier that same afternoon by Grissette and told to come to the motel that evening, that Grissette assured him he had the "stuff" and gave Robinson instructions to go to the motel and told him to park next to the subject green truck in the parking lot.

During the period from January 28 to April 14 investigators had observed on six occasions a 1952 blue over grey, two-tone Packard parked in the back yard adjoining appellant's residence in Jacksonville, Florida.

On April 14 the investigators observed that the Packard was parked in appellant's yard and that the rear end appeared to be elevated 8 to 10 inches as a result of being unloaded and fitted with overload springs. At approximately 3:00 A.M. on April 15, John Elzie Peacock entered appellant's residence in Jacksonville and remained for approximately five minutes. Peacock then left appellant's residence and drove away in the Packard. The investigators followed. Approximately 15 minutes later appellant's 1957 Chevrolet was observed proceeding along the same route as the Packard driven by Peacock. Appellant was later observed while following Peacock at a service station on the outskirts of Jacksonville. A short time later appellant passed the investigators and Peacock. The agents began to follow appellant.

At Maxville, Florida, Peacock turned off onto U. S. Highway 301 and proceeded south. Appellant stopped at a truck stop, waiting a few minutes and then proceeded south on U. S. 301 in the same direction as Peacock. The agents followed appellant to Clay Hill Road where appellant made a turn. The agents saw the tail lights of appellant's car and those of another car proceed up Clay Hill Road.

The agents posted themselves at the entrance of Clay Hill Road and waited. A short time later the Packard, now "sitting normal," emerged from Clay Hill Road. The agents followed for a short distance and then stopped the car. Forty-eight five-gallon cans of moonshine were discovered in the Packard. One of the agents retraced his route and encountered appellant heading toward the scene of Peacock's arrest and arrested him.

Thus we have in the instant case a very clear showing that the appellant

Grissette was involved in the entire sweep of the testimony, that his connection with the goings on was fixed at each point in time and place. Actually the activities of the appellant here as reflected by all the testimony place him at the hub of the wheel of events. We cannot say that the hazard of his being surprised to his prejudice was present at all. Neither do we have here any of the risks frequently encountered in cases involving more than one defendant and more than one charge. There has been no claim that these cases were improperly consolidated. The plain correlation of the various counts, though each a separate offense, was clearly demonstrated by the appellant himself in his successful motion before trial to have the cases consolidated for trial.

■■ This same summary of the testimony gives full support to the verdict of the jury in finding appellant guilty on the substantive charges, and negates his claim of insufficiency. It is well settled, of course, that we are required to review the evidence in this regard in the light most favorable to the Government, and by this standard there was sufficient evidence properly submitted to the jury to support his conviction on the substantive counts.

■ Appellant next claims that the United States Attorney made prejudicial remarks in questioning the witness Peacock. Accepting, arguendo, that there were certain implications of then unsubstantiated fact in the prosecutor's question which were not supported by Peacock the essence of the matter was fully covered later by the testimony of Agent Brown. We find no element of impropriety or unfairness here, and we note that appellant made no objection at the time nor did he otherwise call the matter to the attention of the court. See Baker v. United States, 156 F.2d 386 (5th Cir., 1946) and Teate v. United States, 297 F.2d 120 (5th Cir., 1961) and Rule 52, Federal Rules of Criminal Procedure.

■ Appellant's final point upon this appeal is that the omission of the word "willfully" from the trial court's instruction concerning Title 18 United States Code, Section 2(b), affected his substantial rights so as to deprive him of a fair trial.

Appellant did not raise timely objection during the trial. Therefore, this point, like the third here, was not properly preserved by the appellant for review here. A full reading of the entire instruction to the jury shows, however, that the requirement of willfulness was pointed out by the trial court and explained to the jury as a prerequisite to conviction at least fifteen times, three of which were specifically directed to this particular section of the Code. Accordingly, we find no error.

Appellant was afforded a fair and impartial trial.

The judgment of the district court is Affirmed.