**Robert P. NEES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38912.**

Court of Criminal Appeals of Texas.

March 16, 1966.

Rehearing Denied May 18, 1966.

M. Herbert Oldham, Phillip Bordages, Beaumont, for appellant.

W. C. Lindsay, Dist. Atty., Jim Vollers, Asst. Dist. Atty., Beaumont, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for the misapplication of county funds in violation of Art. 95, Vernon's Ann.P.C.; the punishment, four years.

It is charged that the appellant on or about July 31, 1959, while deputy sheriff

of Jefferson County, Texas, did fraudulently take and convert to his own use $312.35 belonging to Jefferson County which had come into his possession as such officer. The indictment was returned on November 28, 1961.

The proof shows and it is undisputed that the appellant was the duly appointed, qualified, and acting deputy sheriff of Jefferson County at the time here in question. The appellant as such officer was assigned the duties of chief clerk of the sheriff's office. These duties were to receive and to account for all funds paid to the sheriff's office in payment of fines, judgments, tax sales, and other matters for which funds were collected, and to issue receipts for cash, checks, and all funds, and to deposit, disburse, and make a monthly report.

J. M. Gowling, deputy district clerk, testified that he was employed as chief clerk in the sheriff's office from 1941 to 1947, when he went to work in the auditor's office, where he continued working until 1961 when he was employed in the office of the district clerk. The appellant began working as chief clerk in the sheriff's office in 1947, and continued in such position until January 4, 1961. During the period from 1947 to 1961, Gowling and the appellant had discussed the duties of the chief clerk of the sheriff's office. On January 4, 1961, Gowling went to appellant's office and asked for a particular check stub. At this time the following occurred:

"Q At that time, what, if anything, did Mr. Nees tell you?

"A He asked me to take a walk across the street with him.
* * * * * *
"A He said he had something he wanted to tell me.

"Q You are talking about Bob Nees, Robert P. Nees, the Defendant in this case?

"A Yes, sir.
* * * * * *

"A He said he was short in his funds.
* * * * * *
"A I asked him what he meant by 'being short', he said, 'I am. * * * I mean I am short in my accounts in the office.'
* * * * * *
"A He said, 'Somewhere in the neighborhood of *Fifteen Thousand* or more.'

"Q Now, was that fifteen thousand dollars?

"A Yes, sir.

"Q What, if anything, did you do or say then?

"A I asked him what he meant by it, he said, 'Well, I just mean I am short in my funds.' And I said, 'Well, Bob, do you know what this means?' And he said, 'Yes, I do.'
* * * * * *
"A He said, 'What?' I said, 'We are going to have to go and talk to Charlie.'

"Q Now, when you say 'go and talk to Charlie,' who did you mean by Charlie, who were you referring to?

"A The Sheriff, Charlie Meyer.
* * * * * *
"A I told Bob to tell Charlie what he told me.

"Q Did he tell him?

"A He did.

"Q And were you present while he talked to him?

"A Yes, sir.

"Q All right. Was that on or about the 4th of January, 1961?

"A Yes, sir.

"Q Now, at the time that you were talking to Mr. Nees when he first told you about this was he under arrest or charged with anything, or * * *.

"A No, sir."

Between 4 and 5 p. m., January 4, 1961, Deputy Sheriff Moon and the appellant went to the office of Pat Hayes, an investigator for the district attorney's office, where the appellant after having been warned by Hayes in accordance with the statute in effect in 1961, made and signed a written statement pertaining to the shortage of funds and it reads in part as follows:

"My name is R. P. Nees, I am 54 years of age and I live * * * in Beaumont, Texas. In March of 1947 I went to work for Sheriff C. H. Meyer, as a deputy sheriff in Jefferson County and have worked since that time as the office deputy.

"As the office deputy I am the only person who receives money paid into the Sheriff's Office for fines, from people who have been fined in the courts, and fees from civil papers served. I account for the money received by the sheriff's office and I disburse this money in the various places it goes into different offices of the county. When I am not in the office fines are paid to other people in the office, but this money is turned over to me and I am the one who disburses it.

"Sometime in 1952 or 1953 I was in a financial strain because of an illness in my family. I began taking money out of the sheriff's office funds that were in my possession as office deputy. I continued to take money that I knew belonged to Jefferson County and to use for my own personal use and was hoping that I would be able to put it back after I sold some property that I inherited. I inherited this property three or four years after I started taking office money. After I sold the property I did put some of the money back, but not all of it. I have continued to take for my own personal use the money received by me in the Sheriff's Office up through last month. Since I began taking money out of the office up to the present time I would

estimate that I have taken between sixteen and eighteen thousand dollars.

"I have to make a monthly report to the auditor's office and I would use the money collected during a current month to make up the shortage on the last month's report. I did not report fees that I had collected, or show them on my reports, to build up a surplus to cover the monthly reports.

"No other person in the Sheriff's Office, or in the county offices, is responsible in any way for this shortage. I am the only person involved and no one else knew what I was doing. I knew at the time I took this money that it was the property of Jefferson County and no one gave me permission to take or use any of the money received by me as office deputy for my own use and benefit."

After a hearing in the absence of the jury on the issue of the voluntary nature of appellant's written statement, the trial court held that it was voluntarily made and was not as a matter of law inadmissible. No objection was made on the ground that the statement was not voluntary. The objections to it were that he did not have an attorney with him at the time and he was not taken before a magistrate before the statement was made.

The evidence reveals that the Port Arthur Independent School District issued its check dated July 10, 1959, in the sum of $312.35, payable to the sheriff of Jefferson County for a cost bill covering several tax suits; that no receipt was issued for this check and there was no accounting for the check in any of his monthly reports of disbursements; that the school district did not receive any further bill or demands for payment of the matters covered by this check; that said check according to the deposit slips was deposited and returned to and paid by the drawee bank of the school district. The total receipts issued for the month of July, 1959, were $4,372.69, while the total deposited was $2,786.22. The

total deposit in the bank for July, 1959, should have been $4,685.04. The testimony reveals a deposit July 30, 1959, of a check in the amount of $312.35 which was not shown on the receipts. The check for $312.35 is not shown in the monthly report of July, 1959, and the audit of the records of that office until December 5, 1961, does not account for the check other than its deposit and the check stub.

Auditor Nelson of the county auditor's office testified in part as follows:

"Q Now, in the light of what you have testified to and based upon your experience as an accountant and your familiarity with the procedures in the Sheriff's office in accounting for these funds I will ask you what the check number 29221 in the amount of $312.35 which was deposited in the account in July of 1959 but for which no receipt was issued, what does that mean?

"A That means that an amount of $312.35 in cash would be available to the person in charge. Simple arithmetic would show that he would not have to account for the $312.35 if he had not recorded it in his books.

"Q Mr. Nelson, as a matter of fact, does your audit show that at least the amount of $312.35 (counsel walks toward blackboard) during the month of July, 1959, was never accounted for?

"A That is true."

It appears from the testimony that all of the cash received in said office need not be deposited in the bank when checks are deposited for which no receipts have been issued, and then the one making the deposit would not have to account for an amount of cash equal to the checks for which no receipts were issued.

Proof was offered of several other checks received in said office for which no receipts were issued, and said checks were deposited in the bank. These checks were handled in the same or similar manner as the check for $312.35.

Testifying in his own behalf, the appellant denied being in his office on July 30, through August 3, 1959, because of certain events occurring in his family, and denied converting the $312.35 on July 31, 1959; and his absence from the office was supported by the testimony of his wife.

The appellant testified that he voluntarily made statements to Gowling, the sheriff, and Hayes of a shortage in his account in the sum of $16,000 to $18,000, that this money was converted by him to his own personal use, and that he had been anxious to clear the matter up and confess it; that the shortages were created by him taking money from the office which belonged to the county; that he took some money out of said office during the year 1959, but could not remember any specific amount on any certain date and he did not know how much. On further cross-examination the appellant was asked and answered as follows:

"Q Then you know you took some money during the year 1959?

"A I am sure I did."

The appellant contends that he was denied due process of law because he was not warned of his right to counsel prior to his making the written statement; that he was not taken before a magistrate before he made the statement; that he was not advised of his right to remain silent prior to the making of said statement; and that the state failed to prove that the statement was voluntarily given by him.

■ The state's proof shows and the appellant admitted while testifying that he voluntarily initiated and first revealed the shortage which he had wanted to clear up and confess; that he explained the shortage but was unable to be specific because he could not recall the details; that the statements to the officers were voluntarily made; that he was taken before a magistrate at the time the complaint was filed, waived an examining trial, and during this

time he never requested counsel; and that in a short time an attorney appeared, made his bond, and according to the record has continued to represent him. The appellant appeared before the justice of the peace about 5:30 p. m. January 4, bond was set, and he was released on bond at 7:50 p. m. the same day. The contentions presented do not reveal error.

It is insisted that the trial court erred in admitting in evidence extraneous offenses not charged in the indictment which surprised and misled him; and again erred in charging the jury that if they found beyond a reasonable doubt that he fraudulently converted any sum of money to his own use on any date or dates between November 28, 1958, and November 27, 1961, to find him guilty; that these dates surprised and misled the appellant because they were so different from the date alleged in the indictment.

The indictment was returned on November 28, 1961, alleging that the appellant on or about the 31st day of July, 1959, converted certain county funds. A complaint had been filed against the appellant on January 4, 1961, charging him with the commission of said offense and he was discharged as deputy sheriff that day.

■ The method and procedure which the appellant employed to take and convert to his own use cash and checks coming into his possession as such officer was circumstantially shown. There was no direct evidence of any specific taking and conversion on any definite date. Although the appellant admitted the shortage, he stated that he was unable to specifically recall the taking of any particular sum on a certain date. To show the method, scheme and design of the ultimate conversion of county funds, the evidence of other and similar transactions were admissible. Mayse v. State, 156 Tex.Cr.R. 360, 242 S.W.2d 371.

■ The state is not bound by the date on or about which the offense is alleged to have been committed and a con-

viction may be had upon proof that the offense was committed at any time prior to the return of the indictment which is within the period of limitations. The limitation period applicable to the offense here charged is three years anterior to the presentment of the indictment. 5 Branch (2) 313, Sec. 2806; 21 Tex.Jur. (2) 674, Sec. 81; Ellis v. State, 167 Tex.Cr.R. 87, 318 S.W.2d 655.

The charge authorizing a conviction if the jury found beyond a reasonable doubt that appellant misapplied and converted to his own use all or any part of the $312.35 in money followed the provisions of Art. 95, P.C., prohibiting the unlawful conversion of any money belonging to a county. Bone v. State, Tex.Cr.App., 391 S.W.2d 415.

■ Appellant contends that he was denied due process of law by the charge to the jury which materially varied from the indictment alleging the fraudulent conversion of $312.35 on or about July 31, 1959, and the court's instruction to the jury that if they found beyond a reasonable doubt that he fraudulently converted to his own use any sum of money on any date or dates between November 28, 1958, and November 27, 1961, to find him guilty.

The indictment was returned on November 28, 1961, alleging the commission of the offense on or about July 31, 1959. The application of the three year statute of limitation anterior to the return of said indictment would include November 28, 1958.

In applying the law to the facts in submitting the case to the jury, the court gave effect to the "on or about" allegation in the indictment; and in connection therewith applied the law of reasonable doubt. Further, the court charged the jury on the converse of the state's application which was as follows:

"You are instructed that before you can convict the Defendant in this case you must find and believe from the evidence, beyond a reasonable doubt, that on

or about the date alleged in the indictment the Defendant did in Jefferson County, Texas, fraudulently take, misapply and convert to his own use all or some part of said $312.35 in money alleged in the indictment as you are hereinabove instructed with respect to said amount and that said money so taken, misapplied and converted, if it was, belonged to Jefferson County, Texas, and had theretofore come into and was in the custody and possession of the Defendant by virtue of his office as deputy sheriff of Jefferson County, Texas, and if you have a reasonable doubt as to any of these matters you will find the Defendant not guilty."

There was no denial of due process of law by the court's charge as the appellant contends.

The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.