**Robert P. NEES**

v.

**R. E. CULBERTSON, Sheriff Jefferson County, Texas.**

**Civ. No. 5182.**

United States District Court
E. D. Texas,
Beaumont Division.

Nov. 21, 1966.

M. Herbert Oldham, Philip Bordages, Beaumont, Tex., for plaintiff.

Waggoner Carr, Atty. Gen., Austin, Tex., W. C. Lindsey, Criminal Dist. Atty., Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

FISHER, District Judge.

Petitioner filed for Writ of Habeas Corpus, and by agreement an oral hearing was not held. Counsel for Petitioner and the State have stipulated that the certified record of the Court of Criminal Appeals of Texas in Cause No. 38912, styled Nees v. The State of Texas, 402 S.W.2d 186 (Tex.Cr.App.1966) shall be deemed to be introduced as the entire evidence submitted in connection with this cause.

On December 4, 1964, Petitioner on a plea of not guilty was convicted by a jury of violation of Article 95, Vernon's Annotated Penal Code[1] and assessed a punishment of four years in the penitentiary. Appeal was taken to the Court of Criminal Appeals of Texas where the judgement was affirmed and a motion for rehearing was denied.

The issues raised in the Petition for Writ of Habeas Corpus are the same as those raised on appeal before the State Court, and as to such issues, therefore, State remedies have been sufficiently exhausted and a Federal Court may grant an application for habeas corpus.[2]

Petitioner asserts that his detention is unlawful and in violation of his Federal constitutional rights as follows.

---

1. Art. 95. MISAPPLICATION OF COUNTY OR CITY FUNDS.

"If any officer of any county, city or town, or any person employed by such officer, shall fraudulently take, misapply, or convert to his own use any money, property or other thing of value belonging to such county, city or town, that may have come into his custody or possession by virtue of his office or employment or shall secret (SIC) the same with intent to take, misapply or convert it to his own use, or shall pay or deliver the same to any person knowing that he is not entitled to receive it, he shall be confined in the penitentiary not less than two nor more than ten years."

2. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

First, that he was denied due process of law, a fair trial and effective right of counsel, in that he was not fully informed of the nature and cause of the charges against him in advance of trial, in that he was charged in the indictment with taking a sum certain of money on a specific date and the state, over his objections, was permitted to introduce evidence of deficiencies in his account over a period of a year. Also over the objection of Petitioner, the trial court instructed the jury that if they found beyond a reasonable doubt that the Petitioner unlawfully converted any sum of money from November 28, 1958 (the date the statute of limitations tolled the time), through November 27, 1961 (the date the grand jury returned the indictment), they would find the defendant guilty. Further, that the approval of the Court of Criminal Appeals of this procedure and interpretation of Article 396, Section 6 of the Code of Criminal Procedure of Texas, 1952,[3] resulted in the defendant-petitioner having no notice of the nature and cause of the accusation against him and denied him effective counsel in that counsel did not know the type of proof he would be required to refute.

As his second ground, Petitioner states that he was denied due process of law by the introduction of a confession into evidence which statement was taken without having been advised of his right to counsel prior to the taking of the confession.

In regard to the first ground, I find the facts correctly stated by the Texas Court of Criminal Appeals:

"The proof shows and it is undisputed that the [Petitioner] was duly appointed, qualified, and acting deputy sheriff of Jefferson County at the time here in question (SF 18–20) The [Petitioner] as such officer was assigned the duties of chief clerk of the sheriff's office (SF 387). These duties were to receive and to account for *ALL* funds paid to the sheriff's office in payment of fines, judgments, tax sales, and other matters for which funds were collected, and to issue receipts for cash, checks, and *ALL* funds, and to deposit, disburse, and make a monthly report." (SF 70–72, 387, 388) (Emphasis added). 402 S.W.2d 186, 187.

"The evidence reveals that the Port Arthur Independent School District issued its check dated July 10, 1959, in the sum of $312.35, payable to the sheriff of Jefferson County for a cost bill covering several tax suits (SF 36); that no receipt was issued for this check and there was no accounting for the check in any of [the petitioner's] monthly reports of disbursements (SF 205); that the school district did not receive any further bill or demands for payments of the matter covered by this check (SF 44); that the said check according to the deposit slips was deposited and returned to and paid by the drawee bank of the school district (SF 38). The total receipts issued for the month of July, 1959, were $4,372.69, while the total deposited was $2,786.22. The total deposit in the bank for July, 1959, should have been $4,685.04. (SF 179). The testimony reveals a deposit July 30, 1959 of a check in the amount of $312.35 which was not shown on the receipts (SF 178). The check for $312.35 is not shown in the monthly report of July, 1959, and the audit of the records of that office until December 5, 1961, does not account for the check other than its deposit and the check stub." 402 S.W.2d 186, 188, 189 (Citations to the Statement of Facts added.)

---

3. This the same statute now contained in Art. 21.02, Requisite 6, of the Texas Code of Criminal Procedure of 1965, ART. 21.02 (396) (451) (439) REQUISITES OF AN INDICTMENT, "An indictment shall be deemed sufficient if it has the following requisites:

6. The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation."

■■ Rather than resting their case at this point, the State elected to go further and introduce the records of Petitioner for the months of December 1958 through December 1959, (excluding July 1959) as its exhibits Nos. 20–30, all of which showed discrepancies on the part of the Petitioner. These were "not offered for the limited purpose to show motive, intent and design, but for all purposes" (SF 290), and were so accepted. It is upon this acceptance that the Petitioner bases part of his first ground of exception. This evidence is admissible under the widely accepted evidentiary rule that evidence is admissable if it tends directly or fairly to prove defendant's guilt of the crime charged, or to connect him with it or tends to establish a scheme, plan, or system, Tandberg-Hanssen v. United States, 284 F.2d 331, 333 (10th Cir. 1960); Jencks v. United States, 226 F.2d 540, 548 (5th Cir. 1955) rev'd on other grounds, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).

■ As to the matter of relevancy, this is an evidentiary question which the Supreme Court has held to be a matter within the realm of state courts, Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941), and is therefore not reviewable here on a Petition for Habeas Corpus.

■ As to the trial court charging the jury to consider as the date of conversion any date or day between November 28, 1958 and November 27, 1961, no authority is cited by Petitioner for the proposition that this is a denial of counsel and therefore a violation of his constitutional rights reviewable by this court in a habeas corpus proceeding; nor has the court been able to find such authority. Suffice it to say that the instruction and interpretation of Article 396, Section 6, of the Code of Criminal Procedure of Texas 1925, "An indictment shall be deemed sufficient if it has the following requisites: 6. The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation," seems to be the same as that pronounced in the Federal cases, Winslett v. United States, 124 F.2d 302 (5th Cir. 1942); Alexander v. United States, 271 F.2d 140 (8th Cir. 1959); United States v. Krepper, 159 F.2d 958 (3rd Cir. 1946) cert. denied, 330 U.S. 824, 67 S.Ct. 865, 91 L.Ed. 1275 (1947).

■■ Although not raised in his petition for habeas corpus, Petitioner raises the question in his trial brief of the possibility of a fatal variance existing between the indictment, evidence and the charge of the trial court. The admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and procedure not involving Federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protection that a federal question is presented. Grundler v. State of North Carolina, 283 F.2d 798, 801 (4th Cir. 1960); United States ex rel. Sliva v. Commonwealth of Pennsylvania, 196 F.Supp. 51 (E.D.Penn. 1961); Davis v. State of North Carolina, 196 F.Supp. 488 (E.D.N.C.1961), rev'd on other grounds, 310 F.2d 904 (4th Cir. 1962); Hammil v. Tinsley, 202 F.Supp. 76, 79 (D.Colo.1961); Morales v. Wilkinson, 283 F.2d 252 (5th Cir. 1960); Rhay v. Browder, 342 F.2d 345 (9th Cir. 1965). I do not find such circumstances in this case, nor do I find that there is a material variance such as to affect the petitioner's constitutional rights. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

Petitioner contends as his second ground a violation of due process and right to counsel in "the action of the State Court in admitting into evidence at his trial a so-called 'confession' or a statement taken by a special investigator of the district attorney's office of Jefferson County, Texas, at a time when the applicant had not been warned of his

right to counsel prior to the taking of such statement, said interrogation being at all times in the 'accusatory' state of such interrogation."

The statement of facts indicate and the court so finds that on January 4, 1961, a J. M. Gowling went to the petitioner's office and asked for a record of a particular check stub (SF 56); that the Petitioner asked Gowling to walk across the street with him as he had something he wanted to tell Gowling (SF 57); that Petitioner told Gowling that he (Petitioner) was short in his office accounts somewhere in the neighborhood of Fifteen Thousand Dollars (SF 62, 409); that this was reported to the Sheriff; that somewhere between 4:00 P.M. and 5:00 P.M. (SF 150) January 4, 1961, Deputy Sheriff Moon took Petitioner to the office of Pay Hayes, an investigator for the District Attorney's office (SF 130); that while in the office Petitioner was warned by Hayes of the effect of any statement he might make and that he did not have to make any statement (SF 105, 131) and a complaint was drawn up against the Petitioner (SF 131); that while in the office the Petitioner made some type of preliminary statement to the investigator (SF 132); that thereafter at approximately 5:30 P.M., January 4, 1961, the Petitioner was arraigned and voluntarily waived an examining trial before Justice of the Peace Wallace McCasland (SF 112); and bond was set; that thereafter Petitioner went back to the investigator's office and after again being advised of his rights made the statement which was admitted at the trial in which he admitted shortages of Sixteen to Eighteen Thousand Dollars (SF 134). I further find that the Petitioner was most cooperative with the investigators throughout this proceeding (SF 134, 378, 414); that the Petitioner never asked for nor was denied an attorney (SF 134, 157); that the Petitioner had been working in the sheriff's office as a deputy full time for some fourteen years and was fully aware of his constitutional rights (SF 375); that Petitioner, Moon and Hayes were good friends and the investigators would have certainly obtained an attorney for him had he requested one (SF 138); that no coercion of any type, promise of benefit or reward or other inducement was used to obtain the confession of the petitioner; and that it was completely voluntary (SF 134, 474); and that petitioner was released to his attorney on bond at 7:50 P.M. January 4, 1961 (SF 140).

The trial of this case began on December 1, 1964 (TR 1). This was some six months after the decision in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), but over a year prior to the decision of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Therefore, the guidelines established in *Escobedo* as to the admissibility of the confession will be applied. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). It is certainly true that the proceedings had narrowed to the accusatory stage at the time the statements were taken. Escobedo v. State of Illinois, *supra*. However, the Petitioner admits that the statement was freely and voluntarily given (SF 414); that he cooperated with the investigators; that they did not mistreat him (SF 414); that he was very anxious to get the whole thing off his chest (SF 409), Stein v. People of State of New York, 346 U.S. 156, 200, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), Frankfurter, J., dissenting; that he was taken before a magistrate within an hour and a half; and as I mentioned previously the interrogators were personal friends of the accused who would have certainly allowed him to see counsel had he requested one.

It must be remembered that petitioner had been a deputy sheriff for fourteen years and was aware of the effect of any statements that he would make. The trial court held a separate hearing outside of the hearing of the jury and determined that the confession was voluntary (SF 112, 152), Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12

L.Ed.2d 908 (1964). I therefore find that the Petitioner made his statements or confessions freely, voluntarily and with a full understanding of his rights in the matter and with a full understanding of the consequences of such statements.

The trial and appellate state court records show conclusively that Petitioner was not denied due process of law in the respects claimed and his application for Habeas Corpus is Denied.