Robert P. NEES, Appellant,

v.

R. E. CULBERTSON, Sheriff, Jefferson County, Texas, Appellee.

No. 24400.

United States Court of Appeals Fifth Circuit.

Jan. 28, 1969.

Rehearing and Rehearing En Banc Denied March 24, 1969.

Phillip Bordages, M. Herbert Oldham, and A. W. Dycus, Beaumont, Tex., for appellant.

Lonny F. Zwiener, Robert E. Owen, Jim Vollars, Asst. Attys. Gen., Austin, Tex., Crawford C. Martin, Atty. Gen. of Texas, George M. Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst. Atty. Gen., R. L. Lattimore, Howard M. Fender, Asst. Attys. Gen., Austin, Tex., for appellee.

Before JOHN R. BROWN, Chief Judge, and WISDOM and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

The appellant, Robert P. Nees, was indicted and convicted for fraudulent misapplication of public funds in violation of Article 95, Vernon's Annotated Penal Code.[1]  Specifically, the indictment

---

1. "Art. 95.  Misapplication of county of city funds:

If any officer of any county, city or town, or any person employed by such officer, shall fraudulently take, misapply, or convert to his own use any money, property or other thing of value belonging to such county, city or town, that may have come into his custody or possession by virtue of his office or employment or shall secret [sic] the same with intent to take, misapply or convert it to his own use, or shall pay or deliver the same to any person knowing that he is not entitled to receive it, he shall be confined in the penitentiary not less than two nor more than ten years."

charged that Nees on or about July 31, 1959, did fraudulently take and convert to his own use $312.35 belonging to Jefferson County, Texas, which had come into his possession while acting as deputy sheriff of that county. He was tried on a plea of not guilty, was found guilty of the offense charged in the indictment, and was sentenced to four years imprisonment. His conviction was affirmed by the Texas Court of Criminal Appeals. Nees v. State, Tex.Cr.App. 1966, 402 S.W.2d 186.

Nees petitioned the Federal District Court for writ of habeas corpus claiming two errors, namely, (1) that the charging allegations of the indictment varied from the proven facts and thus failed to give him notice of the accusations against him, and (2) that he was denied the assistance of counsel at the time he made an inculpatory statement to an investigator, which statement was admitted into evidence. Nees' petition was denied by the District Court, Nees v. Culbertson, E.D.Tex.1966, 260 F.Supp. 791, from which judgment he now appeals. We affirm the denial of the writ.

The status and duties of Nees at the time in question were never in dispute. He was the duly appointed deputy sheriff of Jefferson County, whose functions were to receive and to account for all funds paid to the sheriff's office for fines, judgments, tax sales, and other matters. His accounting procedures included the issuance of receipts for deposits and disbursements and the compiling of a monthly report.

The prosecution advanced and the court admitted the following evidence to prove that Nees had misused his position as deputy sheriff: (1) check stubs, cash receipts, bank deposits, cancelled checks, and monthly reports from the financial records of the Sheriff of Jefferson County, Texas, covering the months of November, 1958, to November, 1961; (2) the testimony of a fellow employee to the effect that Nees had admitted taking funds in the amount of $15,000.00; (3) the county auditor's report, and (4) a confession of guilt obtained from Nees.

## I.

We first focus our inquiry on the nexus of the indictment, evidence, and jury charge. Although the indictment charged only a specific crime, i. e., the unlawful taking and conversion of $312.35, evidence was introduced over Nees' objections concerning defalcations of fifteen to twenty thousand dollars over a three-year period. The crux of Nees' argument, both at the trial and on this appeal, is that this divergence between the words of the indictment and the evidence presented at trial constituted undue surprise, contrary to the due process clause of the fourteenth amendment.

Nees acknowledges that his conviction was obtained in compliance with traditional Texas criminal practice. Indeed, the indictment was drawn precisely in accordance with Article 21.02 of the Vernon's Ann.Texas Code of Criminal Procedure (formerly Article 396) which reads in relevant part:

> "An indictment shall be deemed sufficient if it has the following requisites:
>
> *    *    *    *    *    *
>
> 6.   The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation.
>
> 7.   The offense must be set forth in plain and intelligible words.
>
> *   *   *"

Moreover, Texas courts have sanctioned the introduction of germane evidence despite certain variances from the charge as to the time and nature of crime—even when that extra evidence itself leads to the conviction. In Mayse v. State, 1951, 156 Tex.Cr.R. 360, 242 S.W.2d 371, a case directly in point, the defendant was accused of embezzling funds belonging to the city which had come into his possession by virtue of his office as city secretary. The Texas Court of Criminal Appeals held that a

conviction could be sustained regardless of whether the state proved embezzlement of the exact sum specified in the indictment. The following statement by the Court is applicable here:

> "The indictment charged the embezzlement by the appellant of $5,154.03.

> The state was not, however, under the burden of establishing that such sum was embezzled. To the contrary, the conviction was authorized by a showing of the conversion of any sum of money." 242 S.W.2d at 372.

See also Ellis v. State, 1958, 167 Tex.Cr.R. 87, 88, 318 S.W.2d 655, where the same court reversed a defendant's conviction for misappropriation of public funds because he had been acquitted two years earlier on the same indictment. The court applied the following doctrine in denying the State's claim that it was relying on different transactions in the two cases:

> "The general rule is that the state is not bound by the allegation of 'on or about' in an indictment as to the date of the commission of the offense, but may rely upon any date within the period of limitation. 23 Tex.Jur. 648, Sec. 41; Vidaurri v. State, 155 Tex.Cr.R. 17, 230 S.W.2d 536; Lozano v. State, 159 Tex.Cr.R. 613, 266 S.W.2d 147." 318 S.W.2d at 656.

Numerous other reaffirmations of this general rule include Grantom v. State, Tex.Cr.App.1967, 415 S.W.2d 664, 665; Ex Parte Martin, Tex.Cr.App.1964, 374 S.W.2d 436, 438; Rogers v. State, 1960, 169 Tex.Cr.R. 239, 333 S.W.2d 383, 384.

Nees acknowledges the above authority and does not contend that he was treated in any unique manner under the present Texas law. Indeed, he seeks to overturn that law whose nebulous tolerances he claims deny him the basic right to know the specific boundaries of the State's charge.

The State's reply is two-fold. First, it contends that the evidence was not extraneous, but rather was essential to demonstrate the methodical fraud perpetrated by Nees. The State points out that the crime of embezzlement springs from a position of trust, and rarely, if ever, will the actor resort to open misappropriation. The nature of the crime, then, requires balance-sheet computations, not only to establish the misappropriation of a specific sum of money, but also to present to a jury outward manifestations of the accused's inner conscience.

The first contention categorizes the problem as one of evidence and not one of indictment sufficiency. It finds basis in the fact that the State did prove the conversion of a $312.35 check, and the jury did convict Nees of the misappropriation of some or all of the $312.35. The jury's verdict was rendered in accordance with one of the trial court's instructions which read as follows:

> "You are instructed that *before you can convict the Defendant* in this case you must find and believe from the evidence, beyond a reasonable doubt, that on or about the date alleged in the indictment the Defendant did in Jefferson County, Texas, fraudulently take, misapply and convert to his own use *all or some part of said $312.35 in money alleged in the indictment* as you are hereinabove instructed with respect to said amount and that said money so taken, misapplied and converted, if it was, belonged to Jefferson County, Texas, and had therefore come into and was in the custody and possession of the Defendant by virtue of his office as deputy sheriff of Jefferson County, Texas, and if you have a reasonable doubt as to any of these matters you will find the Defendant not guilty." (Emphasis added.)

The verdict itself stated:

> "We, the jury, find the defendant guilty of fraudulent misapplication of county funds *as charged in the indictment*, and assess his punishment at confinement in the penitentiary for a term of Four (4) years." (Emphasis added.)

Viewed from the above facts, Nees' complaint becomes one merely of

over-proof rather than one of under-charging. Nees' burden of showing injustice is thus increased, because state evidentiary procedures are generally not subjected to microscopic examination by the federal courts. In Lisenba v. California, 1941, 314 U.S. 219, 228–229, 62 S.Ct. 280, 286, 86 L.Ed. 166, 176, the Supreme Court refused to review the admissibility of what the defendant had claimed to be irrelevant and unduly shocking evidence. The Court stated as its underlying rationale: "We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence." This proposition was recently reaffirmed in Burgett v. Texas, 1967, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319. Even though the Court in that case rejected the evidentiary admissibility of a prior conviction obtained when the defendant had been denied the assistance of counsel, it was careful to state:

"We do not sit as a court of criminal appeals to review state cases. The States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution." 88 S.Ct. at 261, 19 L.Ed.2d at 324.

Our Court, through its general supervisory power over federal courts rather than through its constitutional supervision of state courts, has had occasion to comment on an evidentiary issue similar to the one at bar. In Weiss v. United States, 5 Cir. 1941, 120 F.2d 472, 474–475, we affirmed a conviction for mail fraud despite the trial court's admission into evidence of fraudulent transactions which had not been specifically alleged in the indictment. Judge Holmes' scholarly opinion in denying the defendant's petition for rehearing is relevant to our case.

"Let us consider the theory upon which such evidence is admissible. The general rule is that evidence of another crime unconnected with the one on trial is inadmissible, but this rule is subject to a number of exceptions, the first of which is that evidence of other offenses by the accused is admissible to show his criminal intent as to the offense charged, where the other offenses are similar to and not too remote from that charged, and where intent is in issue as an element of the offense charged. Another exception is where the evidence of a separate crime tends to explain, illustrate, or characterize the act charged when such act is capable of more than one construction. Another is to rebut a claim of mistake or inadvertence. An exception also applies where the crime charged is one of a series of swindles or other crimes involving a fraudulent intent, or where the crime charged is part of a plan or system of criminal action. It is clearly admissible in prosecutions for obtaining money by false pretenses. The length of time over which an inquiry as to other offenses may extend is within the sound discretion of the trial court." 122 F.2d 675, 682, cert. den., 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550.

The *Weiss* analysis was quoted by our Court eighteen years later in Ahrens v. United States, 5 Cir. 1959, 265 F.2d 514, 516. It has been cited with approval in many cases, including Hurst v. United States, 5 Cir. 1967, 370 F.2d 161, 166, where we affirmed a conviction for conspiracy to violate various sections of the Internal Revenue Code, despite the admission of testimony concerning a related criminal act which had taken place about ten months before the earliest accusatorial date in the indictment. See also United States v. Kirkpatrick, 6 Cir. 1966, 361 F.2d 866, 868 and United States v. Coleman, N.D.Miss.1966, 259 F. Supp. 394, 396, aff'd, 5 Cir. 1967, 383 F.2d 989, which acknowledge and follow *Weiss*, and, for a similar statement of law, Jencks v. United States, 5 Cir. 1955, 226 F.2d 540, 550, rev'd on other grounds, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

The above authority demonstrates that, if reviewed solely as an evidentiary challenge, Nees' petition for habeas cor-

pus relief must fail. Our Court's refusal to grant relief under its federal supervisory power shows, *a fortiori*, that we cannot justify relief from state convictions through the more limited powers granted in habeas corpus.

The State's attempt to limit the issue as one of evidence is weakened, however, by another of the trial court's instructions to the jury, which did seem to expand the nature of Nees' crime from that alleged in the indictment:

> "You are instructed that, as a part of the law of this case, the State is not under the burden of establishing that the specific sum of $312.35, as alleged in the indictment, was unlawfully and fraudulently taken by the Defendant and converted to his own use, it being, on the contrary sufficient under the law if the State has established, from the evidence, beyond a reasonable doubt, that *any sum of money* was unlawfully and fraudulently taken by the Defendant and converted to his own use on or about the 31st day of July, 1959, as the term 'on or about said date,' as applied to this case, is construed as thereinabove set forth. [set forth as *any time* from November 28, 1958 (the date the statute of limitations tolled the time) through November 27, 1961 (the date the grand jury returned the indictment)]." (Emphasis added.)

To be sure, the existence of such a charge may not necessitate a change in the nature of our considerations from those described previously. In fact, we question whether the above charge had any effect because the trial court, as we have quoted previously, also charged the jury that they could convict Nees only if they believed beyond a reasonable doubt that he did "fraudulently take, misapply and convert to his own use all or some part of said $312.35 in money alleged in the indictment." Since Article 95 under which Nees was convicted lists no monetary minimum or degrees of the

offense, it could be argued that the trial court's restriction renders its broad charge meaningless. Moreover, the jury's verdict did limit itself to "fraudulent misapplication of county funds as charged in the indictment." Nevertheless, because the broad statement of the Texas law was given to the jury, we will consider whether such statement adversely affected Nees' constitutional right to have fair notice of the charges against him.

The State's second contention meets squarely this problem of fair notice. The State argues that, if Texas law clearly allows some variance between an indictment and proof of guilt, defendants cannot be misled by such practice where they are represented by competent counsel.[2] It adds that, for the same reasons that evidence of a continuing fraud was relevant, proof of such fraud could not have surprised Nees. Specifically, because proof of a solitary fraudulent misapplication would have been impossible absent an unlikely eyewitness, the necessity of admitting some form of running account analysis was self-evident.

■■ Although we do not reject the possibility of unfairness within the Texas procedure, our review in habeas corpus must be limited to the rights of Nees and to the fairness of his particular trial. It is not the function of this Court to search for an achilles' heel in every state criminal proceeding. Rather our aim is to relieve particular defendants who have suffered from constitutional deprivations. We deem any variance between Nees' indictment, proof, and charge as constitutionally harmless or immaterial if the following two factors can be shown: (a) The indictment gave Nees actual knowledge of the character of his accusation so that he was not misled while preparing his defense; and (b) Nees will be able to advance these proceedings as a defense to further prosecution for the same misappropriations.[3]

---

2. The defendant has never alleged that his counsel was inadequate.

3. "The true inquiry, therefore, is not whether there has been a variance of

Our analysis of these two factors and of the applicable law reveals that Nees' trial was constitutionally sound.

(a) *Surprise.* Although awareness is a relative concept and not easily calibrated in all instances, it would be a mockery of reality to say that Nees was surprised by the evidence presented at his trial. The indictment did not necessitate a safari into darkness; the target was fraudulent misappropriation and it had specificity. The State did prove a $312.35 misappropriation, and the nature of the crime renders it inconceivable that Nees was caught off-guard by evidence of more extensive but related treasury raiding. The only positive proof of Nees' crime was a showing of a deficit, and this required a beginning and ending period of accountability. The composite figure could not be the indictable one because it was merely an arbitrary measure of kaleidoscopic elements. But the necessity of the composite rendered probable if not inevitable a description of the kinetics within.[4]

In 1961 our Court denied relief (under 28 U.S.C.A. § 2255) from a federal conviction despite the defendant's claim that he was misled by (1) a mistake as to the statutory reference in his indictment and (2) insufficient detail in the indictment concerning the crime alleged. Judge Brown's words in that case teach us to seek out real instead of fictional injustices:

"When properly analyzed the allegations made by appellant misinterpret the scope of review in a § 2255 proceeding. This is not a direct appeal from the judgment of conviction but a motion to vacate the judgment or reduce the sentence to a valid statutory maximum, much in the nature of a habeas corpus proceeding. Cf. Brinson v. Wilkinson, 5 Cir. 1959, 271 F.2d 790, 791. The reviewing court may reverse or set aside the conviction only if it finds that petitioner was denied some basic fundamental right. Mere error in the trial or handling of the case leading to conviction is not sufficient. Section 2255 has application only when the judgment is void or subject to collateral attack. [cases cited.]

"Viewed in this light appellant's claim as to the erroneous statutory reference in the indictment is disposed of easily. Appellant was represented by counsel and the indictment adequately and positively alleged facts constituting a crime under § 2113(a) though it erroneously referred to subsection (b). Under these circumstances it is highly doubtful that he was misled at all, but even if he were, his proper remedy was by appropriate motion or appeal from the original judgment. The defect, if any, is not such as to render the judgment subject to collateral attack.

\*     \*     \*     \*     \*     \*

"As the indictment adequately alleged a federal crime, the claimed lack of sufficient detail in the indictment likewise is beyond the scope of a § 2255 proceeding." Schmidt v. United States, 5 Cir. 1961, 286 F.2d 11, 12.

---

proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. [cases cited]." Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, 1318.

Several later cases have adopted the *Berger* rationale, including Russell v. United States, 1962, 369 U.S. 749, 763, 82 S.Ct. 1038, 82 L.Ed.2d 240, 250–251; Grissette v. United States, 5 Cir. 1963, 313 F.2d 187, 188; United States v. Mills, 6 Cir. 1966, 366 F.2d 512, 514.

4. We deem it significant, though not conclusively so, that although Nees' counsel objected when evidence of other misappropriations was admitted, he never moved for a continuance.

Even more recently our Court affirmed a conviction despite a chronological error in the defendant's indictment and stated broadly:

"As to prosecutions in the United States Courts, we think appellant's contentions were settled by the Supreme Court as far back as 1898. In Ledbetter v. United States, 170 U.S. 606, 612, 18 S.Ct. 774, 42 L.Ed. 1162, the Court said,

'Neither is it necessary to prove that the offense was committed upon the day alleged, unless a particular day be made material by the statute creating the offense. Ordinarily, proof of any date before the finding of the indictment, and within the statute of limitations will be sufficient.' [other cases cited]." Owen v. United States, 5 Cir. 1967, 386 F.2d 774.

See also United States v. Crowder, 6 Cir. 1964, 346 F.2d 1, where the Sixth Circuit affirmed a federal conviction even though the prosecution could not show that any of the twelve money orders alleged in the indictment as stolen were present among the 235 money orders introduced into evidence. Besides applying the two judicial tests of surprise and double jeopardy, the Court found additional authority in Fed.R.Crim.P. 52(a), the "harmless error rule." [5]

Constitutional strictures on state criminal procedure should not be more rigorous than on the federal government in the application of its criminal law. We cannot support a double standard. Nees' indictment was not a decoy, and we cannot grant habeas corpus relief on the variance which he claims.

(b) *Double Jeopardy.* In Ellis v. State, Tex.Crim.App.1958, 167 Tex. Cr.R. 87, 88, 318 S.W.2d 655, which we have quoted supra, the Texas Court of Criminal Appeals reversed a conviction for misappropriation of public funds because of a previous acquittal for the same offense. The State claimed that

it was relying on different evidence, but the Court answered with the following statement:

"There was evidence introduced by the state in [the second case] that had been theretofore introduced in [the first case] which was sufficient to sustain a conviction in [the first case] and could have been used by the jury as a basis for either or both verdicts in said causes. Therefore the former judgment of acquittal operates as a bar to the prosecution and conviction in this cause." 318 S.W.2d at 658.

A careful reading of the *Ellis* opinion assures us that Nees will not be convicted at a future trial in which the same evidence is advanced. Moreover, the opinion even implies that Nees is protected from a conviction on any evidence of misappropriation between November, 1958, and November, 1961, regardless of whether it was actually advanced at his trial. See also Rogers v. State, 1960, 169 Tex.Cr.R. 239, 333 S.W.2d 383, 384; Hobbs v. State, 1962, 171 Tex.Cr.R. 607, 352 S.W.2d 836, 837. Certainly Nees cannot claim harm in this regard.

We do not hold here that if a variance follows traditional Texas practice, it can never be so prejudicial as to affect constitutional rights of a defendant. There is a time for exactitude as well as a time for tolerance in the precising of a crime. In fact, the Texas Court of Criminal Appeals itself has reversed convictions when variances between indictment and proof were substantial. Zybura v. State, Tex.Cr.App.1967, 420 S.W.2d 954, and cases cited therein ("material variance between the pleading and the proof as to the date of the prior misdemeanor conviction"); Hodge v. State, 1957, 164 Tex.Cr.R. 69, 297 S.W.2d 138 (at [1]). However, our concern is not for rigid formalism, but rather for trials in which defendants are aware of the nature of their accusations. We find such awareness in Nees' trial.

---

5. Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

## II.

Nees' second contention involves the admission of a confession which he gave to an investigator before he was advised of his right to counsel. The trial court found that Nees came under suspicion when he informed an associate, J. M. Gowling, that he was short of funds to the extent of $15,000.00 or more. Gowling immediately reported this to the sheriff, and Nees was taken to the District Attorney's office where he was questioned by a special investigator. While there, Nees was warned that any statement he might make would be used against him and that he did not have to make any statement if he chose not to do so. He was not advised of his right to counsel. Nees, however, did allow his statement to be recorded and later signed a written copy. The trial court further found, after a separate hearing outside the presence of the jury, that Nees had been working in the sheriff's office about fourteen years and was aware of his constitutional rights, and that no coercion, promise, or other inducement was used to obtain the confession.

This case was tried before the Supreme Court's decision in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. We find that Nees' rights under Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, were not violated, and, under Johnson v. New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, his *Miranda* rights cannot be retroactivated.

Affirmed.

JOHN R. BROWN, Chief Judge (concurring and dissenting in part):

I concur fully in Part II and so very, very much in Part I. But in the final analysis my difference as to Part I would call for reversal so I dissent to that extent.

What I do not disagree with sharpens my difference. Thus, I agree there is no ground to claim denial of due process from the standpoint of double jeopardy. The Texas law [1] on that is extremely liberal and would afford the petitioner full protection as to every item and transaction making up the 15 to 20 thousand dollar diversions. Similarly, proof of other like activities to show motive, design, plan, scheme and the like exposes this sort of defendant to blunderbuss proof which, despite the law's rationalization, undoubtedly poisons the mind of the jury on the isolated, charged incident.[2] As Judge Goldberg so graphically portrays, the practical necessity for this sort of proof is augmented in situations of running embezzlement. The more sophisticated it is, with offsetting false entries which all have to be kited, proof of the crime must frequently have its alpha and end in its omega. In between may be, as there was here, evidence concerning 15 to 20 thousand dollars to establish a $312.35 diversion. Nor am I opposed to the general proposition recognized by Federal Law [3] and by the Texas Code [4] that "on or about" may encompass an act committed prior to the indictment but within the period of the statute of limitations. All of these developments are just part of the hazards of the trade of embezzlement or misapplication of public funds. It is risky business, and ought to be.

But this is not what concerns me. Here is a charge that has that rare precision which only figures permit. The charge is for the misapplication of $312.35, no more, no less. There is no charge of misapplication of 15 to 20 thousand dollars. Granted that virtually a 3-year period of time is allowed in which to show the misapplication of $312.35, the trial court did not limit it to that.

1. See Ellis v. State and related text in the Court's opinion.

2. See Weiss v. United States and appended text in the Court's opinion.

3. See Owen v. United States and appended text in the Court's opinion.

4. See Art. 21.02 and text in the Court's opinion.

To be sure, in the early part of the State Court's charge the jury was required to find, beyond a reasonable doubt, that the defendant did misapply "all or some part of *said* $312.35 in money alleged in the indictment." [5]

But this simplicity which showed a matching of the indictment charge, the proof and any verdict of guilty was soon obliterated. I say obliterated because the acceptable and understandable "on or before" rule of Art. 21.02 was expanded somehow into allowing the jury to find the defendant guilty if, at any time in the 3-year period preceding the indictment, the defendant had misapplied so much as a single red cent! [6]

I can assume that a state statute could define constitutionally a crime of misapplication of *any* sum of money under any circumstances within the 3-year period of the statute of limitation. That would at least supply fair notice to (a) nascent misappliers who want to know their "rights" before doing any till-dipping and, more likely, (b) those caught and charged. But here the statute defining the crime has no such broad reach. Nor is it changed by the "on or before" latitude of Art. 21.02. That pertains to time of the event, not a multiplicity of events.

The simple fact is that nobody—I mean no, no, nobody, a lawyer, party, or Judge of this or any other Court, high or low,—could take this record and with the most "perceptive antennae" Morgan v. United States, 5 Cir., 1968, 399 F.2d 93; Tillman v. United States, 5 Cir., 1969, 406 F.2d 930, 936 [Jan. 9, 1969 slip opinion at 11] ever penetrate the enigmatic riddle of the mystery wrapped verdict of guilty to ascertain the jury's determination as to *what* money was taken, the *amount* of that money or *when* it was taken. One thing we know. The $312.35 was quite unimportant. What convicted the petitioner might have been a single dollar six months before that alleged event, or $10,000 2 years later.

Thus, by a simple, but now deceptively tragic charge of a specific sum at a specific time, the defendant finds after the fact, that he was obliged to defend against a charge of misapplying *any* sum at *any* time over a 3-year period.

We may come to legislative definition of crimes of such latitude,[7] but until we do I do not think due process permits the exposure of a citizen to these unknown, unascertainable, indefinable risks, certainly not out of statutory construction or procedural rules, legislative or judge made.

---

5. See the Court's opinion at 624.

6. The Court's opinion sets it out but it bears repeating.

"You are instructed that, as a part of the law of this case, the State is not under the burden of establishing that the specific sum of $312.35, as alleged in the indictment, was unlawfully and fraudulently taken by the Defendant and converted to his own use, it being, on the contrary sufficient under the law if the State has established, from the evidence, beyond a reasonable doubt, that *any sum of money* was unlawfully and fraudulently taken by the Defendant and converted to his own use on or about the 31st day of July, 1959, as the term 'on or about said date,' as applied to this case, is construed as thereinabove set forth. [set forth as *any time* from November 28, 1958 (the date the statute of limitations tolled the time) through November 27, 1961 (the date the grand jury returned the indictment)]." (Emphasis added.)

7. Such a statute would be a shocker. It would read like this: "If any officer of any county, city, or town, or any person employed by such officer shall fraudulently take, misapply, or convert to his own use *any* money, that *may* have come into his custody or possession by virtue of his office *at any time within three years prior to the date such person is indicted*, he shall be confined in the penitentiary not less than two nor more than ten years."

An indictment drawn under such a statute would likewise be repulsive, abhorrent, despicable, dreadful, withering, and astounding. It would go like this; "It is hereby charged that Raymond Roe, being an officer of this county, did, *within three years prior to the date of this indictment* fraudulently misapply *some sum of money belonging to this county*, against the peace and dignity of the State."

Given counsel of the greatest skill and a trial before the fairest jury, presided over by the most meticulous Judge, the beginning is nevertheless a mystery. It is not until the trial is over that the defendant knows *what* he is charged with doing or *when* it took place.

For a man to know at the end, but not before, what he has been tried for and what has happened to him, simply does not square with ideas of fairness, fair play, and much less, constitutionally mandated due process.

I therefore respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.